Lawrence Turkow, Plaintiff-Respondent,†

v.

Wisconsin Department of Natural Resources,
Defendant-Appellant.

Court of Appeals

*No. 97–1149. Submitted on briefs October 8, 1997.—Decided
January 13, 1998.*

(Also reported in 576 N.W.2d 288.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney

general, and *Joanne F. Kloppenburg*, assistant attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Richard J. Carlson* of *Silton, Seifert, Carlson & Gamble, S.C.* of Appleton.

Before Cane, P.J., Myse and Hoover, JJ.

CANE, P.J. The Wisconsin Department of Natural Resources appeals a summary judgment granted in favor of Lawrence Turkow in his declaratory judgment action. In June 1994, the DNR advised Turkow that two walkways and a fence obstructed a navigable stream on his property and ordered him to remove all three structures within forty-five days or face citation. Turkow did not pursue any remedy available under ch. 227, STATS. Instead, he began an action against the DNR seeking a declaration that the DNR lacked jurisdiction to make orders regarding the stream or, alternatively, was estopped from changing the navigability status of the stream based on the Public Service Commission's finding in a 1957 water level determination proceeding that the stream was non-navigable.

On appeal, the DNR contends summary judgment should not have been granted in Turkow's favor because the trial court improperly concluded that the DNR is estopped from reconsidering the navigability of the stream based on the commission's finding of non-navigability in 1957. The DNR also asserts that the trial court's denial of its motion to dismiss should be reversed because the declaratory judgment action is barred by sovereign immunity principles, and the exclusive method of review is set forth in ch. 227, STATS. We agree and therefore reverse.

The facts of the case are undisputed. Turkow owns property located between Big Lake and Big Lake Road. In 1942, the natural overflow outlet of the lake was blocked in connection with the construction of Big Lake Road, and a new artificial outlet was constructed. That artificial outlet drainageway (the stream) is located on Turkow's property and is the subject of the underlying proceedings and this appeal. Sometime prior to January of 1989, the DNR received complaints from citizens regarding their inability to use the stream due to the walkway and fence obstructions. In response to the complaints, the DNR investigated and concluded the stream was navigable. In addition, a navigability test was performed in June 1989 with the same result.

Apparently, there was no further action regarding the stream until 1994 when the DNR, in response to additional citizen complaints, wrote to Turkow advising him that the stream on his property was navigable and that the walkways and steel fence placed in the stream violated §§ 30.10 and 30.15, STATS., and ordering him to remove the obstructions within forty-five days or face citation. In response, Turkow filed the underlying action and based his complaint on findings of fact issued in conjunction with an order setting the minimum water level of Big Lake in a proceeding held in 1957. At that time, approximately twenty-six landowners on Big Lake filed a petition with the PSC asking for an investigation whether water was being diverted from Big Lake. The result of the petition was an order establishing a 100-foot minimum water level and requiring construction of a permanent obstruction at the outlet of Big Lake. The pertinent section of the commission's findings of fact indicates:

2. The natural outlet of Big Lake ran through a marsh area at the north end of the lake. In 1942 the natural outlet was blocked, and a new outlet was constructed extending due east to Mud Lake and located 707 feet north of the south line of section 2. *Neither the original outlet stream nor the relocated stream is navigable.* (Emphasis added.)

Turkow did not own the property at the time of the PSC determination. He purchased the property in 1971. One walkway and the metal fence were present in the stream at that time. The dwelling on the property was apparently built by Turkow's predecessor sometime after the PSC determination in 1957. The house is located approximately twenty-five feet from the stream. Turkow claims he knew of the PSC determination of non-navigability when he purchased the property.

The DNR moved to dismiss Turkow's action, asserting that ch. 227, STATS., provides the exclusive remedy for a challenge to the DNR's decision, and the motion was denied. The trial court found that the DNR lacked jurisdiction to regulate the stream because of its non-navigable status and that it was estopped from changing the navigability status of the stream based on PSC's 1957 finding of non-navigability. The trial court granted Turkow's motion for summary judgment, stating, "[The] Wisconsin Department of Natural Resources is precluded and equitably estopped from designating as navigable that reach of a watercourse between Big Lake and Big Lake Road over [Turkow's] property." The DNR appeals from the summary judgment.

## SUMMARY JUDGMENT

■

We review a summary judgment decision de novo applying the standards set forth in § 802.08, STATS., in the same manner as the trial court. *County of Dane v. Norman*, 174 Wis. 2d 683, 686, 497 N.W.2d 714, 715 (1993). Summary judgment is appropriate when there exists no genuine issue of material fact and the party is entitled to judgment as a matter of law. Section 802.08, STATS. Turkow and the DNR moved for summary judgment, and both agreed the case was appropriate for summary judgment, there being no material facts in dispute. We, therefore, examine whether either Turkow or the DNR was entitled to judgment as a matter of law.

Turkow maintains the trial court's grant of summary judgment in his favor was proper. Turkow asserts that the DNR has no jurisdiction to regulate activity on non-navigable waters, and reasons that since the PSC made a finding of non-navigability in 1957, the DNR clearly lacks jurisdiction. We are not persuaded. It is true that if the stream on Turkow's property was, in fact, non-navigable, the DNR would lack authority to take action regarding the stream. However, under § 31.02, STATS., the DNR not only maintains, but is entrusted with, the regulation and control of water level and flow in all navigable waters. Section 31.02(1), STATS.[1] Implicit in this power is the

---

[1] Section 31.02(1), STATS., provides:

**Powers of department. (1)** The department, in the interest of public rights in navigable waters or to promote safety and protect life, health and property may regulate and control the level and flow of water in all navigable waters and may erect, or may order and require bench marks to be erected, upon which shall be designated the maximum level of water that may be impounded and the

DNR's ability to make threshold navigability determinations regarding the bodies of water within the state. *See* 2 AM.JUR.2D *Administrative Law* § 277 ("An administrative agency generally may and must determine whether it has jurisdiction in a particular situation.").

The DNR determined the stream was navigable and advised Turkow that the walkways and fence across the stream on his property unlawfully obstructed the free navigation of the stream. This determination was based on §§ 30.10(2) and 30.15, STATS., which provide in part as follows:

> 30.10(2) STREAMS. Except as provided under sub. (4)(c), all streams . . . which are navigable in fact for any purpose whatsoever, are declared navigable to the extent that no dam, bridge or other obstruction shall be made in or over the same without the permission of the state.
>
> 30.15(1) OBSTRUCTIONS PENALIZED. Any person who does any of the following shall forfeit not less than $10 nor more than $500 for each offense:
>
> (a) Unlawfully obstructs any navigable waters and thereby impairs the free navigation thereof.

We conclude that the DNR acted within its authority when it determined the stream was navigable.

Turkow further contends that the trial court's grant of summary judgment should stand because under equitable estoppel principles the DNR cannot

lowest level of water that may be maintainted by any dam heretofore or hereafter constructed and maintained and which will affect the level and flow of navigable waters; and may by order fix a level for any body of navigable water below which the same shall not be lowered except as provided in this chapter; and shall establish and maintain gauging stations upon the various navigable waters of the state and shall take other steps necessary to determine and record the characteristics of such waters.

now change the PSC's 1957 finding of non-navigability. He argues that he has relied on the commission's finding, and that a change in the navigability classification will negatively affect his property rights and possibly subject him to future zoning violations. We are not persuaded.

The doctrine of equitable estoppel is not applicable to the DNR's navigability decision regarding the stream on Turkow's property. The DNR has the authority, as well as the obligation, to determine whether the waters of the state are navigable in fact and, therefore, subject to regulation under ch. 30, STATS. The PSC's ancillary finding some forty years ago, in a proceeding to establish a water level, cannot now be used to prevent the DNR from fulfilling its public trust responsibilities under ch. 30.

## MOTION TO DISMISS

On appeal, the DNR also argues the trial court erred when it denied its motion to dismiss. RULE 809.10(4), STATS., provides "[a]n appeal from a final judgment . . . brings before the court all prior nonfinal judgments . . . adverse to the appellant." We, therefore, are permitted to consider whether the trial court's denial of the DNR's motion to dismiss was proper. We review the denial of the DNR's motion to dismiss for failure to state a claim de novo. *See Heinritz v. Lawrence Univ.*, 194 Wis. 2d 606, 610, 535 N.W.2d 81, 83 (Ct. App. 1995). The complaint should be dismissed as legally insufficient if it is clear from the facts as pleaded and the inferences reasonably derived therefrom that under no circumstances can the non-moving party prevail. *Voss v. City of Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991).

The DNR claims that, because Turkow's suit is barred by the doctrine of sovereign immunity, no circumstances exist under which Turkow can prevail. The DNR asserts that the state's immunity also applies to state agencies, and that a suit for declaratory judgment is barred unless the state has expressly consented to be sued. Further, the DNR points out that the state has consented to be sued for actions against state agencies, as limited by the proceedings set forth in ch. 227, STATS. Relying on *Kosmatka v. DNR*, 77 Wis. 2d 558, 253 N.W.2d 887 (1977), the DNR argues that declaratory judgment is inappropriate because it improperly bypasses the exclusive means of administrative review provided by the legislature. We agree.

█

The principle of state sovereign immunity is clearly established, *see Polk County v. State Public Defender*, 179 Wis. 2d 312, 317, 507 N.W.2d 576, 578 (Ct. App. 1993), *affd,* 188 Wis. 2d 665, 524 N.W.2d 389 (1994),[2] and this immunity has been extended to state agencies. *See Lister v. Board of Regents*, 72 Wis. 2d 282, 291, 240 N.W.2d 610, 617 (1976). A plaintiff must point to a legislative enactment authorizing suit against the state to maintain his or her action. *Chart v. Gutmann*, 44 Wis. 2d 421, 426, 171 N.W.2d 331, 334 (1969); *Graney v. Board of Regents*, 92 Wis. 2d 745, 750, 286 N.W.2d 138, 141–42 (Ct. App. 1979). The consent to suit against a state agency is set forth in ch. 227, STATS., *Jackson County Iron Co. v. Musolf*, 134 Wis. 2d 95,

---

[2] *See also Fiala v. Voight*, 93 Wis. 2d 337, 343, 286 N.W.2d 824, 830 (1980); *Cords v. Anderson*, 80 Wis. 2d 525, 540, 259 N.W.2d 672, 679 (1977); *Lister v. Board of Regents*, 72 Wis. 2d 282, 291, 240 N.W.2d 610, 617 (1976); *Chicago, M. & St. P. Ry. v. The State*, 53 Wis. 509, 513, 10 N.W. 560, 561 (1881).

101–03, 396 N.W.2d 323, 325–26 (1986),[3] and constitutes the exclusive method for judicial review of agency determinations. *Kosmatka*, 77 Wis. 2d at 567, 253 N.W.2d at 892; *see also Kegonsa Joint Sanitary Dist. v. City of Stoughton*, 87 Wis. 2d 131, 145–46, 274 N.W.2d 598, 605 (1979).

Here, the state has expressed its consent to be sued in § 227.52, STATS., which provides in relevant part, "Administrative decisions which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form, are subject to review as provided in this chapter." The remedy available to a person aggrieved by an agency decision is set forth in § 227.53(1), STATS., which states, "Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.52 shall be entitled to judicial review thereof as provided in this chapter." Chapter 227 provides for both administrative review of agency action and judicial review of agency decisions and orders. *See* §§ 227.42, 227.44, 227.52, 227.53, and 227.57, STATS. The record establishes that Turkow did not pursue any remedy available in ch. 227.

The DNR relies on *Kosmatka* for the proposition that a declaratory judgment action is not proper when a plaintiff essentially circumvents the review provided in ch. 227, STATS. In *Kosmatka*, the plaintiffs sought a permit for a structure on their lakefront property. After public hearing, the DNR issued findings of fact and an order denying the permit application. Kosmatka did

<hr />

[3] *See also Sewerage Comm'n of Milwaukee v. DNR*, 102 Wis. 2d 613, 630, 307 N.W.2d 189, 198 (1981); *State ex rel. First Nat'l Bank v. M&I Peoples Bank*, 82 Wis. 2d 529, 542, 263 N.W.2d 196, 202 (1978); *State v. WERC*, 65 Wis. 2d 624, 630–31, 223 N.W.2d 543, 547 (1974).

not seek ch. 227 judicial review of the order; rather, he sought and obtained a declaratory judgment that the structure was a pier which could be maintained without a permit. The Wisconsin Supreme Court reversed, and stated: "[T]he granting of a declaratory judgment in favor of the plaintiff had the effect of improperly bypassing the review of the DNR administrative order under Chapter 227, Stats. (1973)." *Id.* at 565, 253 N.W.2d at 891.

Based on state sovereign immunity principles and ch. 227, STATS., we conclude the proper method for challenging the DNR's navigability determination is to pursue the relief afforded in ch. 227, and the DNR's motion to dismiss should have been granted on that basis. We therefore reverse the trial court's decision on the motion to dismiss.

In summary, we conclude that the trial court erred when it concluded the DNR lacked jurisdiction and was estopped from determining navigability of the stream on Turkow's property. We, therefore, reverse the trial court's decision to deny the DNR's motion to dismiss and motion for summary judgment and the grant of summary judgment in favor of Turkow.

*By the Court.*—Judgment reversed.