John C. Koshick a/k/a Jack Koshick d/b/a Jack Koshick Presents, Plaintiff-Appellant,

v.

State of Wisconsin, Defendant-Respondent.

Court of Appeals

*No. 2005AP539. Submitted on briefs August 10, 2005. —Decided September 8, 2005.*

2005 WI App 232

(Also reported in 706 N.W.2d 174.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Kent A. Tess-Mattner, Schmidt, Rupke, Tess-Mattner & Fox, S.C.*, Brookfield.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Sandra L. Tarver*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J.   This appeal involves the construction of WIS. STAT. § 775.01,[1] which permits suit

---

[1] The codified statute at the time relevant to this appeal was WIS. STAT. § 775.01 (1999–2000). It is the same version found at § 775.01 (2003–2004) and provides:

against the State of Wisconsin in prescribed circumstances. John C. Koshick's complaint alleges that the State breached a contract to lease the Wisconsin State Fair Park to him for an event called the Milwaukee Metal Fest, and he seeks damages for lost profits and expenses incurred. The circuit court granted the State's motion to dismiss on the ground of sovereign immunity and Koshick appeals, contending that § 775.01 permits his breach of contract claim. We conclude that Koshick's breach of contract claim seeking lost profits and expenses incurred is not a "claim" within the meaning of § 775.01. Therefore, the State is entitled to dismissal on the ground of sovereign immunity. We affirm.

## BACKGROUND

¶ 2.   According to Koshick's complaint, on June 2, 1999, he entered into a contract with the director of the Wisconsin State Fair Park to lease part of the park to him on July 30, 1999 and July 31, 1999, so that he could produce the Milwaukee Metal Fest. Koshick was to pay the State Fair Park Board $10,000 for use of the park and was to receive in return specified percentages of the gross revenues from sales of food, beverages, merchandise, and tickets. The contract was to be reduced to writing, although the complaint does not allege that

**Actions against state; bond.** Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service as provided in s. 801.11(3) and by filing with the clerk of court a bond, not exceeding $1,000, with 2 or more sureties, to be approved by the attorney general, to the effect that the claimant will indemnify the state against all costs that may accrue in such action and pay to the clerk of court all costs, in case the claimant fails to obtain judgment against the state.

All references to the Wisconsin Statutes are to the 2003–2004 version unless otherwise noted.

this was done. In reliance on the contract, the complaint alleges, Koshick engaged bands to play at the festival, began advertising, arranged for tickets to be printed, and entered into agreements with MTV to broadcast the festival in Europe and on Pay for View in the United States. On or about July 1, 1999, the State Fair Park director told Koshick that the State Fair Park Board would not honor its agreement to lease the park to him.

¶ 3. The complaint also alleges that Koshick presented a claim for $5,910,212 to the Wisconsin Claims Board and the board rejected his claim. Koshick then introduced a bill into the Wisconsin legislature to enact legislation providing for payment to him of $5,910,212, and the bill was defeated. The complaint asserts two claims for relief, breach of contract and promissory estoppel, and seeks damages for lost profits and expenses incurred.[2] The complaint does not allege that Koshick paid any money to the State Fair Park Board.

¶ 4. The State moved to dismiss the complaint based on the doctrine of sovereign immunity. The State argued that it had consented to suit under the limited circumstances of WIS. STAT. § 775.01. According to the State, the meaning of "claim" in the statute does not encompass the types of claims for which Koshick sought relief.[3] The circuit court agreed with the State and dismissed the complaint.

---

[2] The complaint does not label the two causes of action, but that is not necessary in order to state a claim for relief. *Strid v. Converse*, 111 Wis. 2d 418, 422–23, 331 N.W.2d 350 (1983). The facts alleged adequately state claims for breach of contract and for promissory estoppel.

[3] The State conceded in the circuit court that Koshick had followed the statutory procedures necessary to bring suit against the State.

## ANALYSIS

¶ 5. On appeal, Koshick argues that the circuit court erred in concluding that his breach of contract claim is barred by the doctrine of sovereign immunity because, according to Koshick, the court erred in its construction of WIS. STAT. § 775.01.[4] The dispute over the meaning of § 775.01 in this case involves the meaning of the word "claim": "Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state . . . ." Section 775.01. Koshick's position is that "claim" means a claim for breach of contract seeking money damages, and, thus, includes his breach of contract claim, which seeks compensation for expenses he incurred in anticipation of holding the festival at the State Fair Park and for lost profits based on his anticipated share of revenues from the sale of food, beverages, merchandise, and tickets.

¶ 6. Sovereign immunity derives from article IV, section 27 of the Wisconsin Constitution, which provides: "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." The State waives its sovereign immunity and consents to suit only as expressly directed by the legislature. *State v. P.G. Miron Constr. Co.*, 181 Wis. 2d 1045, 1052–53, 512 N.W.2d 499 (1994). If the legislature has not done so and if the defense of sovereign immunity is raised, then the court has no personal jurisdiction over the State. *Lister v. Board of Regents*, 72 Wis. 2d 282, 291, 240 N.W.2d 610 (1976).

---

[4] Koshick does not argue that the circuit court erred in dismissing his claim for promissory estoppel.

¶ 7. The issue on this appeal requires us to construe WIS. STAT. § 775.01 to determine whether it expresses the legislature's intent that the State may be sued for the breach of contract claim alleged in Koshick's complaint. The construction of a statute and the application of case law to a given set of facts—here, the allegations in the complaint—present questions of law, which we review de novo. *Brown v. State*, 230 Wis. 2d 355, 363–64, 602 N.W.2d 79 (Ct. App. 1999).

¶ 8. The original version of WIS. STAT. § 775.01 was enacted in 1850, and, although it has been renumbered since that time, the text has remained substantially the same as relevant to this appeal.[5] The oldest case we have been able to locate discussing the meaning of "claim" in the statute is *Chicago, Milwaukee & St. Paul Railway Co. v. State*, 53 Wis. 509, 10 N.W. 560 (1881). That was an action to restrain the State from collecting more than the plaintiff had already paid for a license fee. *Id.* at 509–10. The court concluded that the action was not authorized by the predecessor to § 775.01, stating:

> It is manifest from the language of the section, and from the whole chapter of which the section is a part, that the statute relates only to actions upon those ordinary claims against the state which, if valid, render the state a debtor to the claimant; and not to an equitable action . . . .

---

[5] 1850 Wis. Laws, ch. 249, §§ 1, 2. It appeared at WIS. REV. STAT. § 3200 (1878) when the court in *Chicago, Milwaukee & St. Paul Railway Co. v. State*, 53 Wis. 509, 10 N.W. 560 (1881), considered it. It was renumbered to WIS. STAT. § 285.01, 1925 Wis. Laws, ch. 4, § 1, and then renumbered again to WIS. STAT. § 775.01. 1979 Wis. Laws, ch. 32, § 53.

613

*Id.* at 512. Several years later, the court applied this same meaning—claims which, if valid, render the state a debtor to the claimant—in concluding that the statute did not apply to tort actions. *Houston v. State*, 98 Wis. 481, 487, 74 N.W. 111 (1898). Since *Houston*, this has been the meaning consistently given the statute—most often in the context of reaffirming the ruling in *Houston* that the statute does not permit tort claims against the State. *See, e.g., Holzworth v. State*, 238 Wis. 63, 67, 298 N.W. 163 (1941); *Chart v. Gutmann*, 44 Wis. 2d 421, 428–31, 171 N.W.2d 331 (1969); *Cords v. State*, 62 Wis. 2d 42, 50, 214 N.W.2d 405 (1974); *Brown v. State*, 230 Wis. 2d 355, 364, 602 N.W.2d 79 (Ct. App. 1999).

¶ 9. In *Trempealeau County v. State*, 260 Wis. 602, 605–06, 51 N.W.2d 499 (1952), the court gave more definition to the term "debtor" as used to limit the types of claims authorized by the statute. In *Trempealeau*, the claim was for money that the State had received, which, the plaintiff county alleged, belonged to the county. *Id.* at 602–03. The specific type of action was one "to recover upon an obligation implied in law, for the recovery of money had and received." *Id.* at 604. The State argued that this claim was not authorized by the statute because it was based on equitable considerations, even though it was classified as an action at law, and thus should be treated as a claim demanding relief in equity. *Id.* at 604–05.[6] The court began its analysis of

[6] The case cited by the court in *Trempealeau County v. State*, 260 Wis. 602, 605, 51 N.W.2d 499 (1952), for the proposition that the statute did not authorize claims requesting equitable relief is *In re Wausau Investment Co.*, 163 Wis. 283, 290, 158 N.W. 81 (1916). That case relied on the meaning given the statute in *Chicago, Milwaukee & St. Paul Railway Co. v. State*, 53 Wis. 509, 512, 10 N.W. 560 (1881)—"claims which, if valid, render the state a debtor"—to conclude that the statute

the issue by asking whether the relationship between debtor and creditor existed in the action. *Id.* at 605. The court turned to the definition of "debt" in CORPUS JURIS SECUNDUM, according to which a " 'debt' is that for which an action of debt or *indebitatus assumpsit* will lie; and includes a sum of money due upon a contract, implied in law, 26 C.J.S., *Debt,* page 1[.]"[7] *Trempealeau,* 260 Wis. at 605. Because the claim before it was one based upon a contract implied in law and the relationship of debtor-creditor between the plaintiff and the State existed, the court concluded the claim was authorized by the statute. *Id.* at 606.

¶ 10. Koshick asserts that, because his breach of contract claim is neither a tort claim nor a claim seeking equitable relief, it is authorized by WIS. STAT. § 775.01. However, this position overlooks the meaning the *Trempealeau* court gave the term "debt": "that for which an action of debt or *indebitatus assumpsit* will lie." *Trempealeau,* 260 Wis. at 605. The *Trempealeau* court concluded that the claim there was authorized by the statute not because it was a breach of contract claim, but because it was for a sum of money due upon a contract implied in law, thus making the State a debtor. *Id.* at 605–06. Therefore, the relevant inquiry here is whether Koshick's breach of contract claim is an action of debt or *indebitatus assumpsit.* To answer this

did not authorize an action seeking an order that the State redeem certain tax certificates out of state funds. *Wausau Inv. Co.,* 163 Wis. at 290–91.

[7] 26 C.J.S. *Debt* § 2 (2001) explains that "[a]n action of debt is a concurrent remedy with assumpsit on all simple contracts, where the sum to be recovered is certain or may readily be ascertained either from the contract itself or by operation of law."

inquiry, we consult the section of CORPUS JURIS SECUNDUM that the *Trempealeau* court consulted.

¶ 11.   26 C.J.S. explains that "debt," for which an action of debt will lie, is "a specific sum of money which is due or owing from one to another." 26 C.J.S. *Debt* § 1 (2001). An essential element of the action is that it is for a

> fixed and definite sum of money, or one that can readily be made fixed and definite, either from fixed data or agreement, or by mathematical computation or operation of law. Thus, an action of debt does not lie to recover unliquidated or unascertained damages. Further, the action cannot be maintained where the sum must be ascertained by resorting to extraneous evidence.
>
> However, an action for debt can be maintained for the reasonable value of goods and materials where goods are sold and delivered . . . or where the terms of a contract furnish the means of ascertaining the exact amount due for specific articles or services.

26 C.J.S. *Debt* § 4 (2001).

¶ 12.   Koshick's breach of contract claim is plainly not an action on a debt. He is not seeking an amount due for goods or services that he has sold or delivered to the State; he is not, as was the plaintiff in *Trempealeau*, seeking money that the State has received that he asserts he is entitled to. The lost profits and the incurred expenses he seeks to recover are not liquidated; they cannot be readily determined from the terms of the alleged contract or from fixed data or mathematical computation.

¶ 13.   Koshick argues that "claim" in WIS. STAT. § 775.01 cannot be construed to mean only actions of *indebitatus assumpsit* because this term refers to an

action to recover money after a judgment finding that money was owed. Koshick relies on *Harrigan v. Gilchrist*, 121 Wis. 127, 441, 99 N.W. 909 (1904), for this argument. However, the passage Koshick refers to states that *indebitatus assumpsit may* be used to recover money after a judgment has been rendered; it does not suggest that this is the only situation in which this type of action is appropriate. *Id.* There is, therefore, nothing in *Harrigan* that calls into question the way in which the *Trempealeau* court defined "debt."

¶ 14.  The supreme court and this court have each applied *Trempleau's* construction of the statute in deciding that a claim was authorized by WIS. STAT. § 775.01. In *Boldt v. State*, 101 Wis. 2d 566, 568, 305 N.W.2d 133 (1981), the claim was for recovery of certain social security payments the State had received on the plaintiff's behalf to which, the plaintiff alleged, he was entitled. Relying on *Chicago, Milwaukee* and *Trempealeau*, the court concluded that the complaint alleged a claim for money had and received, and, thus, came within § 775.01. *Boldt*, 101 Wis. 2d at 572–74.

¶ 15.  In *CleanSoils Wisconsin, Inc. v. DOT*, 229 Wis. 2d 600, 605, 599 N.W.2d 903 (Ct. App. 1999), the claim was for money that a subcontractor on a State project alleged it was owed for work it had done but for which it had not been paid because the general contractor had not been paid by the State. We rejected the State's argument that it was a debtor only to the general contractor, concluding that the subcontractor was a third-party beneficiary under the contract. *Id.* at 611–12. With that issue resolved, we concluded that, applying the meaning of "debt" from *Trempealeau*, there was no dispute that the subcontractor's claim based upon the contract was one that would render the State a debtor to the subcontractor. *CleanSoils*, 229

Wis. 2d at 611–12. However, we also concluded that the subcontractor's claim for unjust enrichment did not come within that definition and therefore was not permitted. *Id.* at 612–13. Specifically, we stated, the receipt of a benefit by the State was not the same as the receipt of money, as in *Trempealeau* and *Boldt*, and, therefore, the subcontractor's claim for unjust enrichment was not a claim for money had and received. *CleanSoils*, 229 Wis. 2d at 612–13.

¶ 16.　Koshick argues that, if claims for money had and received are included within the meaning of "claims" in Wis. Stat. § 775.01, then his claim for breach of contract should be, too. He points out that the former, while an action at law, is governed by equitable principles and is implied at law, *see CleanSoils*, 229 Wis. 2d at 611, 613, citing *Trempealeau*, 260 Wis. at 605–06, while he had an express contract with the State. However, the reason an action for money had and received is a "claim" within the meaning of § 775.01 is that, according to the *Trempealeau* court's definition of "debt," such a claim, if valid, renders the State a debtor to the claimant. *Trempealeau*, 260 Wis. at 605. Whether the contract is express or implied in law, the claim based upon it must nonetheless be one that, if valid, renders the State a debtor to the claimant under the definition of "debt" in *Trempealeau*. *CleanSoils* recognizes and applies this principle.

¶ 17.　Koshick also argues that our decision in *Brown v. State*, 230 Wis. 2d 355, 602 N.W.2d 79 (Ct. App. 1999), supports his position that every claim for money damages for a breach of contract is permitted under Wis. Stat. § 775.01. We do not agree.

¶ 18.　In *Brown*, the plaintiff alleged a breach of contract arising out of the State's refusal to pay her lottery winnings in monthly rather than annual install-

ments; she sought either the present value of the entire award or an order directing payment by monthly installments. *Id.* at 359–60.[8] The circuit court dismissed the claim on the ground that WIS. STAT. § 775.01 does not encompass claims for specific performance of a contract under our ruling in *Erickson Oil Products, Inc. v. State,* 184 Wis. 2d 36, 516 N.W.2d 755 (Ct. App. 1994).[9] *Brown,* 230 Wis. 2d at 371. We agreed that an order for payment of future installments was in essence an order for specific performance and that, under *Erickson,* the legislature has not expressly consented to suit for specific performance of a contract. *Brown,* 230 Wis. 2d at 371–72. However, we concluded that *Erickson* did not address the issue of installments that were allegedly already due but unpaid. *Brown,* 230 Wis. 2d at 372–73. Because the State provided no authority for concluding that § 775.01 did not permit a claim for breach of contract seeking the payments allegedly past due, we concluded the court erred in dismissing on

---

[8] *Brown* also asserted a claim for misrepresentation. *Brown v. State,* 230 Wis. 2d 355, 358, 602 N.W.2d 79 (Ct. App. 1999). Consistent with established case law, we concluded that WIS. STAT. § 775.01 did not consent to suit on this claim because it is a tort. *Id.* at 363–64.

[9] In *Erickson Oil Products, Inc. v. State,* 184 Wis. 2d 36, 41, 516 N.W.2d 755 (Ct. App. 1994), the plaintiff asserted claims of breach of contract, equitable estoppel, and promissory estoppel based upon allegations that the State accepted its offer to purchase certain property and then rejected the offer. The relief sought was an injunction preventing the State from conveying the land to a third party and specific performance of the land contract sale. *Id.* at 41–42. We rejected the plaintiff's arguments that in WIS. STAT. § 775.01 the State had consented to be sued for specific performance of a contract for the sale of real estate, *id.* at 47, and we concluded that the State had not otherwise consented to such suit. *Id.* at 50.

sovereign immunity grounds the breach of contract claim insofar as it sought those payments. *Brown*, 230 Wis. 2d at 373. Ultimately, though, we decided that the circuit court correctly dismissed the entire breach of contract claim because it did not state a claim for relief.[10] *Id.* at 381.

¶ 19. *Brown* does not hold, as Koshick argues, that every breach of contract claim comes within Wis. Stat. § 775.01 as long as the remedy sought is money damages rather than specific performance. Rather, in describing the limits of § 775.01 as construed in prior case law, we specifically stated in *Brown* that the statute is "limited to claims which, if valid, would render the State a debtor to the claimant." *Brown*, 230 Wis. 2d at 364 (citation omitted). Our statement that "*Erickson* does not preclude suit for damages for a breach of contract against the State, but only suit for equitable relief such as an injunction or specific performance," *Brown*, 230 Wis. 2d at 373, is *not* a statement that *Erickson* permits all suits seeking money damages for a breach of contract. Indeed, *Erickson* did not address that issue because no damages were sought, only injunctive relief and specific performance. *Erickson*, 184 Wis. 2d at 41. Nor did we in *Brown* conclude that all claims seeking money damages for breach of contract were claims within § 775.01, as Koshick suggests. As we have already explained, we decided that Brown's breach of contract claim, insofar as it sought only amounts allegedly past due, was not barred by

[10] Specifically, we held that the purchase of a lottery ticket upon prescribed terms creates a binding contract with the State or state lottery agency, *Brown v. State*, 230 Wis. 2d 355, 376, 602 N.W.2d 79 (Ct. App. 1999), but that the complaint and attachments did not allege a breach of the prescribed terms. *Id.* at 379–81.

sovereign immunity because the State did not present authority to the contrary. *Brown*, 230 Wis. 2d at 373. More specifically, the State in *Brown* did not argue that, as to the amounts allegedly past due, it was not a debtor within the meaning of prior case law. We therefore did not address the issue.

¶ 20. Finally, Koshick asserts that, if his action is barred by sovereign immunity even though he has complied with WIS. STAT. § 16.007[11] and WIS. STAT. § 775.01, then he is without a remedy for the damages he has suffered. We addressed the same argument in *Erickson*. There we explained that the Wisconsin Constitution expressly delegates to the legislature the task of determining in what manner the State may be sued, and our supreme court has been unwavering in holding that this responsibility rests exclusively with the legislature; courts will not find consent to suit absent a clear expression by the legislature. *Erickson*, 184 Wis. 2d at 51–52. In addition, we observe that the supreme court has rejected arguments that a citizen has a "right" to sue the State. *See Cords*, 62 Wis. 2d at 51–52.

¶ 21. We recognize that the distinction between an action on debt and other types of actions for breach of contract now appear archaic and may well have no procedural or sustentative significance for litigants bringing such claims against non-State entities today. Nonetheless, there has historically been a distinction. *See* 26 C.J.S. *Debt* §§ 1–4 (2001). *See also* 11 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 995 (interim ed. 2002) (explaining that actions for debt and *indebitatus assumpsit* were both for a sum owed by the defendant

[11] WISCONSIN STAT. § 16.007 prescribes the procedure for presenting a claim to the claims board.

because of a binding obligation to pay that sum or because of receipt of something equivalent in value to that sum, based either on an actual agreement or implied in law; and further explaining that money damages as reparation for a breach of contract were obtained in a different type of action). In its earliest construction of the predecessor to Wis. Stat. § 775.01, our supreme court invoked this distinction to decide what the legislature meant in using the term "claim." *Chicago, Milwaukee*, 53 Wis. at 512. That construction has remained unchanged, with definition added by the court in *Trempealeau*, 260 Wis. at 605–06. When a statute has been construed by the courts, the legislature is presumed to know that in the absence of changing the statute, the construction given by the courts will remain unchanged. *Zimmerman v. Wisconsin Elec. Power Co.*, 38 Wis. 2d 626, 633–34, 157 N.W.2d 648 (1968). Thus, we presume the legislature is aware of the manner in which the courts have construed § 775.01 and its predecessors and has chosen not to alter that construction. It is, of course, free to do so at any time.

¶ 22.   We conclude that Koshick's breach of contract claim seeking damages for lost profits and expenses incurred is not a "claim" within the meaning of Wis. Stat. § 775.01, as construed in *Chicago, Milwaukee*, 53 Wis. at 512, and *Trempealeau*, 260 Wis. at 605–06, and the many cases relying on both. Accordingly, the legislature has not consented to this suit against the State. The circuit court therefore properly dismissed the complaint on the ground of sovereign immunity.

*By the Court.*—Order affirmed.