COURT OF APPEALS
DECISION
DATED AND FILED

October 29, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2022AP1771**

Cir. Ct. No. 2022CV151

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

---

**RILEY FIONTAR, LLC,**

    **PLAINTIFF-APPELLANT,**

  **V.**

**DEPARTMENT OF NATURAL RESOURCES AND PRESTON COLE,**

    **DEFENDANTS-RESPONDENTS.**

---

APPEAL from an order of the circuit court for Eau Claire County: SARAH M. HARLESS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Riley Fiontar, LLC, ("Riley") appeals an order dismissing its claims against the Wisconsin Department of Natural Resources and

the Department's then-secretary, Preston Cole (collectively, "the DNR"). The circuit court determined that Riley's claims against the DNR are barred by the doctrine of sovereign immunity. We agree and, accordingly, affirm.

**BACKGROUND**

¶2      The following background facts are taken from Riley's complaint and an attached "Memorandum of Understanding and Agreement" ("MOU"), and they are assumed to be true for purposes of this appeal. *See Peterson v. Volkswagen of Am., Inc.*, 2005 WI 61, ¶15, 281 Wis. 2d 39, 697 N.W.2d 61. Riley owns a landfill in Eau Claire County ("the Landfill") that is no longer operational but was previously used for disposing of paper mill sludge and ash. After Riley took ownership of the Landfill, the DNR issued Riley multiple notices of noncompliance based on alleged violations of the laws governing landfills.

¶3      In February 2018, Riley and the DNR entered into the MOU "to resolve any and all past disputes" between them, "to define an annual [long-term care] budget" for the Landfill, and to "specify a reimbursement process for future [long-term care] activities … so as to avoid to the extent possible any future disputes." The MOU required the DNR to pay Riley $293,148.56 for past-due long-term care expenses for the Landfill and for a portion of the 2018 long-term care budget for the site. In exchange for that payment, Riley agreed to waive "any and all claims against [the DNR] and the State of Wisconsin" that existed as of the MOU's effective date. The DNR, in turn, agreed to abandon, withdraw, or close any notices of noncompliance that had been issued or threatened against Riley as of the MOU's effective date.

¶4      After the parties entered into the MOU, the DNR issued new notices of noncompliance to Riley. The DNR then withheld long-term care funds that were

due to Riley under the schedule set forth in the MOU. In October 2021, Riley sought to resolve these issues through the MOU's dispute resolution procedures. The parties, however, were unable to resolve their disputes.

¶5 In March 2022, Riley filed the instant lawsuit against the DNR, asserting three claims. First, Riley alleged that the DNR had breached its duty of good faith and fair dealing under the MOU by:

> (a) Issuing new notices [of noncompliance] related to issues that were resolved by the MOU;
>
> (b) Failing to abide by the dispute resolution process contained within the MOU;
>
> (c) Conducting a clandestine operation at the Landfill site and then using such operation to assert false allegations against … Riley—without mentioning the limits and prior resolution of issues per the MOU;
>
> (d) Continuing to allege false opinions and conclusions related to leachate collection that were debunked years[ ]ago; and
>
> (e) not paying Riley or providing an itemized detail of missing payments.

¶6 Second, Riley alleged that the DNR had breached the MOU by failing to "pay and/or reconcile amounts due" to Riley and by engaging in "further conduct"—including that described in the previous claim—that violated the MOU's terms.

¶7 Third, Riley sought a declaratory judgment and injunctive relief. Specifically, Riley asked the circuit court to enter a declaratory judgment directing the DNR to: comply with the MOU; refrain from performing any acts inconsistent with the Landfill's design and intent; withdraw any claims, notices, or actions

inconsistent with the MOU; and pay Riley any amounts due and owing for the Landfill's long-term care.

¶8    The DNR moved to dismiss Riley's complaint. The DNR argued that the doctrine of sovereign immunity barred all of Riley's claims. The DNR also argued that Riley's complaint failed to state a claim upon which relief could be granted. In addition, the DNR argued that Riley's claims against the DNR's then-secretary failed because Riley had not alleged any personal involvement by the secretary.

¶9    Following briefing and oral argument, the circuit court granted the DNR's motion to dismiss in an oral ruling. The court reasoned that under the relevant case law, "the only way [a] suit can be brought against the State is if the claims come within an exception" to sovereign immunity. The court then concluded that there was no "exception applicable to this case that would get past sovereign immunity." The court subsequently entered a written order dismissing Riley's complaint, and Riley now appeals.

## DISCUSSION

¶10    "A motion to dismiss on the grounds of sovereign immunity is a challenge to a court's personal jurisdiction." *Hoops Enters., III, LLC v. Super W., Inc.*, 2013 WI App 7, ¶6, 345 Wis. 2d 733, 827 N.W.2d 120. "We independently review a circuit court's denial of a motion to dismiss for lack of personal jurisdiction." *Id.* On review, we must accept as true all facts alleged in Riley's complaint, and we may also consider the MOU, which is "attached to the complaint and made part thereof." *See Peterson*, 281 Wis. 2d 39, ¶15.

¶11    Sovereign immunity derives from article IV, § 27 of the Wisconsin Constitution, which states that "[t]he legislature shall direct by law in what manner and in what courts suits may be brought against the state." ***Klein v. DOR***, 2020 WI App 56, ¶18, 394 Wis. 2d 66, 949 N.W.2d 608 (quoting WIS. CONST. art. IV, § 27). "From this language, our supreme court has developed a rule that the state 'cannot be sued without its consent.'" ***Id.*** (citation omitted). Thus, if the legislature has not specifically consented to a suit, sovereign immunity generally deprives a court of personal jurisdiction over the state. ***Id.*** Once sovereign immunity is properly raised as a defense, the plaintiff "must point to a legislative enactment authorizing suit against the state to maintain his or her action."[1] ***Turkow v. DNR***, 216 Wis. 2d 273, 281, 576 N.W.2d 288 (Ct. App. 1998).

¶12    Here, we agree with the DNR and the circuit court that sovereign immunity bars Riley's claims. The DNR points to two limited instances in which the legislature has consented to suits against state agencies. First, the legislature has consented to suits against state agencies under WIS. STAT. ch. 227, which constitutes "the exclusive method for judicial review of agency determinations." ***Turkow***, 216 Wis. 2d at 282. "[S]trict compliance" is required with the procedural rules set forth in ch. 227. ***Kosmatka v. DNR***, 77 Wis. 2d 558, 568, 253 N.W.2d 887 (1977). Riley, however, has not identified any reviewable agency decision under WIS. STAT.

---

[1] For purposes of sovereign immunity, a suit against a state agency constitutes a suit against the state. ***Klein v. DOR***, 2020 WI App 56, ¶19, 394 Wis. 2d 66, 949 N.W.2d 608. In addition, a suit "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." ***Hoeft v. City of Beaver Dam***, No. 2014AP2790, unpublished slip op. (WI App June 25, 2015) (emphasis omitted; quoting ***Will v. Michigan Dep't of State Police***, 491 U.S. 58, 71 (1989)); *see also* WIS. STAT. RULE 809.23(3)(b) (2021-22) (explaining that an unpublished opinion authored by a member of a three-judge panel and issued on or after July 1, 2009, may be cited for its persuasive value). Riley's complaint specifies that the DNR's then-secretary was named as a defendant "in his official capacity only."

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

§ 227.52, nor did Riley file and serve a petition for judicial review in accordance with WIS. STAT. § 227.53. As such, Riley's claims against the DNR are not subject to judicial review under ch. 227.

¶13 Second, the legislature has consented to suits against the state under the "specific claims procedure" in WIS. STAT. §§ 16.007 and 775.01. *State v. P.G. Miron Constr. Co.*, 181 Wis. 2d 1045, 1053, 512 N.W.2d 499 (1994). Under § 16.007,

> a party may present a claim to the state claims board, which first holds a hearing and then makes a recommendation to the legislature to grant or deny the claim. If the legislature refuses to allow a claim against the state, the claimant may then, under [§] 775.01, bring an action against the state.

*P.G. Miron*, 181 Wis. 2d at 1053.

¶14 WISCONSIN STAT. § 775.01, however, is "limited to claims which, if valid, would render the State a debtor to the claimant." *Brown v. State*, 230 Wis. 2d 355, 364, 602 N.W.2d 79 (Ct. App. 1999). Stated differently, the "relevant inquiry" is whether a particular claim is "an action of debt." *Koshick v. State*, 2005 WI App 232, ¶10, 287 Wis. 2d 608, 706 N.W.2d 174. To qualify as an action of debt, a claim must be for a

> fixed and definite sum of money, or one that can readily be made fixed and definite, either from fixed data or agreement, or by mathematical computation or operation of law. Thus, an action of debt does not lie to recover unliquidated or unascertained damages. Further, the action cannot be maintained where the sum must be ascertained by resorting to extraneous evidence.

*Id.*, ¶11 (quoting 26 C.J.S. *Debt* § 1 (2001)).

6

¶15    Riley's complaint does not allege an "action of debt" for purposes of WIS. STAT. § 775.01. In its complaint, Riley sought money damages on its claims for breach of contract and breach of the implied duty of good faith and fair dealing in an amount "as [Riley] may prove at trial." Nothing in the complaint or in the attached MOU permits a determination of the damages that Riley is seeking. In other words, Riley is not seeking a "fixed and definite sum of money" that can be determined from the complaint and from the parties' agreement. *See Koshick*, 287 Wis. 2d 608, ¶11 (quoting 26 C.J.S. *Debt* § 1 (2001)).

¶16    Regardless, even if Riley's claims could be construed as an "action of debt," Riley failed to follow the procedure required under WIS. STAT. §§ 16.007 and 775.01. The DNR asserts—and Riley does not dispute—that Riley has not filed a claim with the state claims board. As such, the state claims board has not made a recommendation to the legislature as to whether it should allow Riley's claims against the DNR, and the legislature has not made a determination as to that issue. Furthermore, there is nothing in the record to suggest that Riley has filed with the circuit court clerk

> a bond, not exceeding $1,000, with 2 or more sureties, to be approved by the attorney general, to the effect that the claimant will indemnify the state against all costs that may accrue in such action and pay to the clerk of court all costs, in case the claimant fails to obtain judgment against the state.

Sec. 775.01. Thus, to the extent § 775.01 applies to Riley's claims, Riley is "procedurally barred" from relying on that statute as an exception to sovereign

immunity.[2] *See PRN Assocs. LLC v. DOA*, 2009 WI 53, ¶59, 317 Wis. 2d 656, 766 N.W.2d 559.

¶17    Because neither of the potential statutory pathways for filing suit against the state authorizes Riley's present lawsuit against the DNR, we agree with the circuit court that sovereign immunity bars Riley's claims.  While Riley raises several arguments in support of its contention that its lawsuit should be allowed to proceed, Riley does not explain *what statute* authorizes its suit against the DNR.  As noted above, once sovereign immunity is raised as a defense, the plaintiff "must point to a legislative enactment authorizing suit against the state to maintain his or her action."[3]  *See Turkow*, 216 Wis. 2d at 281.

¶18    Rather than citing a specific statute that would permit its lawsuit against the DNR, Riley makes several other arguments as to why sovereign immunity does not bar its claims.  For instance, Riley argues that because the legislature has granted the DNR regulatory authority pertaining to landfills, and because the DNR used that authority to enter into the MOU, Riley must be permitted to sue to enforce the MOU—apparently without using the procedures set forth in

---

[2] Riley appears to suggest that sovereign immunity does not bar its claims because it has alleged that the DNR withheld funds that were *held in trust* for Riley.  Riley cites no legal authority, however, in support of the proposition that the manner in which the funds were held is relevant to our sovereign immunity analysis.

[3] Riley asserts that the circuit court erred by concluding that sovereign immunity is a bar to all suits against the state unless an exception applies.  However, the court's conclusion in that regard is consistent with Wisconsin case law on sovereign immunity, which states that "[i]f the legislature has not specifically consented to the suit, then sovereign immunity deprives the court of personal jurisdiction over the State, assuming that the defense has been properly raised."  *PRN Assocs. LLC v. DOA*, 2009 WI 53, ¶51, 317 Wis. 2d 656, 766 N.W.2d 559.  And, as noted above, once sovereign immunity is properly raised as a defense, the plaintiff "must point to a legislative enactment authorizing suit against the state to maintain his or her action."  *Turkow v. DNR*, 216 Wis. 2d 273, 281, 576 N.W.2d 288 (Ct. App. 1998).  The circuit court's reasoning is consistent with these authorities: sovereign immunity is the rule, unless a claimant can point to a statute specifically authorizing his or her lawsuit against the state.

WIS. STAT. ch. 227 and WIS. STAT. §§ 16.007 and 775.01. According to Riley, "once the DNR agreed to a contract, signed by the Secretary, resolving past disputes and specifically identifying the [parties'] future relationship, it is that contract that controls the relationship and the authority to act." In other words, Riley asserts that by granting the DNR authority to enter into the MOU, the legislature necessarily waived the DNR's sovereign immunity with respect to claims arising from the MOU.

¶19 Riley's argument in this regard is directly contrary to this court's decision in *Erickson Oil Products, Inc. v. State*, 184 Wis. 2d 36, 516 N.W.2d 755 (Ct. App. 1994). *Erickson Oil* involved an action seeking specific performance of a contract for the sale of state land. *Id.* at 40-41. The Wisconsin Department of Transportation (DOT) initially told Erickson Oil that it was the successful bidder for a particular property, but the DOT later rejected Erickson Oil's offer to purchase and stated its intent to return Erickson Oil's down payment. *Id.* at 41. Erickson Oil then sued, asserting claims for breach of contract, equitable estoppel, and promissory estoppel. *Id.* The DOT moved to dismiss based on sovereign immunity, and the circuit court granted its motion. *Id.* at 42.

¶20 We affirmed the circuit court's decision. As relevant here, we rejected Erickson Oil's argument that "because the legislature has provided in [WIS. STAT. § 84.09(5)] for the DOT to sell, with the governor's approval, land in its custody at a public or private sale, this necessarily implies a consent to sue the State for specific performance of a contract for such a sale." *Id.* at 47. We explained:

> [B]ecause the State is obligated under a contract does not mean that a remedy to institute a suit in court for a breach is implied. Whether the State is liable on a particular contract is a different question from whether the State is immune from being sued by an aggrieved party on that contract.

*Id.* at 50. While "the State's contractual obligation remains, … it is the remedy for any recovery on a claim that is limited" by sovereign immunity. *Id.* Consequently, Erickson Oil's remedy on its breach of contract claim was "limited … to the procedure under [WIS. STAT. §§ 16.007 and 775.01]." *Erickson Oil*, 184 Wis. 2d at 50.

¶21 Despite *Erickson Oil*'s clear holding, Riley cites *Turkow* and *Kosmatka* in support of its claim that it should be permitted to sue the DNR for claims arising from the MOU. Both *Turkow* and *Kosmatka*, however, actually support the DNR's position.

¶22 In *Turkow*, the DNR determined that a stream was navigable and therefore advised a property owner that he was required to remove three structures that obstructed the stream's flow. *Turkow*, 216 Wis. 2d at 275-76. The property owner "did not pursue any remedy available under" WIS. STAT. ch. 227. *Turkow*, 216 Wis. 2d at 275. Instead, he filed a lawsuit against the DNR "seeking a declaration that the DNR lacked jurisdiction to make orders regarding the stream or, alternatively, was estopped from challenging the navigability status of the stream" based on an earlier finding by the Public Service Commission that the stream was not navigable. *Id.*

¶23 On appeal, we agreed with the DNR that the property owner's suit was barred by sovereign immunity. *Id.* at 281. We explained that "[t]he consent to suit against a state agency is set forth in" WIS. STAT. ch. 227, which "provides for both administrative review of agency action and judicial review of agency decisions and orders." *Turkow*, 216 Wis. 2d at 281-82. Accordingly, "the proper method for challenging the DNR's navigability determination [was] to pursue the relief afforded in ch. 227." *Turkow*, 216 Wis. 2d at 283. Because the property owner did

not follow that procedure, we concluded that the circuit court should have granted the DNR's motion to dismiss the property owner's lawsuit on sovereign immunity grounds. *Id.*

¶24    *Turkow* relied in part on the Wisconsin Supreme Court's prior decision in *Kosmatka*. There, property owners applied to the DNR for a permit for a pre-existing structure on a lakebed. *Kosmatka*, 77 Wis. 2d at 560. Following a hearing, the DNR denied the application. *Id.* at 560-61. The property owners did not seek review of the DNR's decision under WIS. STAT. ch. 227; however, they ultimately commenced a declaratory judgment action against the DNR, seeking a declaration that they could maintain and use the structure without a permit. *Kosmatka*, 77 Wis. 2d at 561-62. The circuit court granted summary judgment in favor of the property owners. *Id.* at 563.

¶25    Our supreme court reversed the circuit court's decision, citing the "general proposition that where a specified statutory remedy exists[,] that remedy is exclusive." *Id.* at 565. The court concluded that "[w]hether intended or not, the granting of a declaratory judgment in favor of the [property owners] had the effect of improperly bypassing the review of the DNR administrative order under [WIS. STAT. ch.] 227." *Kosmatka*, 77 Wis. 2d at 565. The court reiterated that the method of review set forth in ch. 227 is "exclusive" and that "the right of appeal from a statutory administrative tribunal in a [ch.] 227 proceeding is dependent upon strict compliance with that chapter." *Kosmatka*, 77 Wis. 2d at 567-68.

¶26    Both *Turkow* and *Kosmatka* stand for the proposition that WIS. STAT. ch. 227 provides the exclusive means to obtain judicial review of a decision of a state agency. The plaintiffs in *Turkow* and *Kosmatka* were precluded from suing the DNR because they had failed to seek judicial review under ch. 227. Similarly,

11

in this case, Riley did not seek judicial review under ch. 227 of any DNR decision related to the Landfill or the MOU. Under these circumstances, **Turkow** and **Kosmatka** support a determination that sovereign immunity bars Riley's claims.

¶27 Riley also argues, generally, that "agency power is limited" and that "acting beyond this limited authority has always allowed such suit." In support of this proposition, Riley cites **Wisconsin Legislature v. Palm**, 2020 WI 42, 391 Wis. 2d 497, 942 N.W.2d 900, and **Clean Wisconsin, Inc. v. DNR**, 2021 WI 71, 398 Wis. 2d 386, 961 N.W.2d 346. Neither of those cases, however, addressed sovereign immunity.

¶28 In **Palm**, the legislature sued the secretary-designee of the Wisconsin Department of Health Services, arguing, among other things, that she had exceeded her authority by issuing a particular emergency order. *See* **Palm**, 391 Wis. 2d 497, ¶¶1-2, 7, 9. While **Palm** discussed limitations on agency authority, *see id.*, ¶52, it did not address sovereign immunity, which was not implicated because the case involved one branch of the state government suing another.

¶29 **Clean Wisconsin**, in turn, was an appeal from a circuit court order reversing a DNR decision regarding a permit. *See* **Clean Wisconsin**, 398 Wis. 2d 386, ¶¶1, 12-13. The petitioners in **Clean Wisconsin** sought judicial review of the DNR's permit decision using the procedures set forth in WIS. STAT. ch. 227. Because the petitioners proceeded under ch. 227, the **Clean Wisconsin** court did not—and did not need to—address sovereign immunity. Here, in contrast, Riley did not proceed under ch. 227. Thus, we agree with the DNR that, rather than aiding Riley's position, **Clean Wisconsin** actually "illustrates exactly what Riley *should have done* to challenge an agency decision."

¶30    Related to its argument regarding agency authority, Riley cites *PRN Associates* and *Lister v. Board of Regents of the University Wisconsin System*, 72 Wis. 2d 282, 240 N.W.2d 610 (1976), arguing those cases show that there is a "general exception to state immunity for actions seeking declaratory relief." Riley asserts that this exception is applicable here because its complaint sought a declaratory judgment.

¶31    Contrary to Riley's assertion, the exception recognized in *Lister* and *PRN Associates* does not apply to all lawsuits seeking declaratory relief. As discussed above, this court expressly concluded in *Turkow* that a declaratory judgment action against the DNR was barred by sovereign immunity because the plaintiff had failed to seek review of the DNR's decision under WIS. STAT. ch. 227. In *Lister* and *PRN Associates*, however, our supreme court recognized a "fiction" that allows declaratory judgment actions against state agencies to proceed under certain circumstances. *See Lister*, 72 Wis. 2d at 303; *PRN Assocs.*, 317 Wis. 2d 656, ¶52. More specifically, the *Lister* court explained that

> the declaratory judgment procedure is particularly well-suited (in cases where such relief is otherwise appropriate) for resolving controversies as to the *constitutionality or proper construction and application of statutory provisions*. As a result, it has been necessary to engage in a fiction that allows such actions to be brought against the officer or agency charged with administering the statute on the theory that a suit against a state officer or agency is not a suit against the state when it is based on the premise that the officer or agency is *acting outside the bounds of his [or her] or its constitutional or jurisdictional authority*.

*Lister*, 72 Wis. 2d at 303 (emphasis added; footnote omitted); *see also City of Kenosha v. State*, 35 Wis. 2d 317, 323, 151 N.W.2d 36 (1967) (stating that "courts

13

may entertain suits to enjoin state officers and state agencies from acting beyond their constitutional or jurisdictional authority").

¶32    Riley's declaratory judgment claim does not pertain to the constitutionality or proper construction and application of a statute. *See **Lister***, 72 Wis. 2d at 303. Nor does Riley allege that the DNR acted beyond its constitutional or jurisdictional authority. *See **id.*** Instead, Riley's complaint alleges that the DNR failed to comply with, or acted beyond, its authority *under the MOU*. We agree with the DNR that, under these circumstances, the narrow exception to sovereign immunity discussed in ***Lister*** and ***PRN Associates*** is inapplicable.[4]

¶33    For these reasons, we conclude that sovereign immunity bars Riley's claims against the DNR. We therefore affirm the circuit court's order dismissing Riley's complaint.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] In the section of its brief addressing the exception to sovereign immunity discussed in ***Lister v. Board of Regents of the University Wisconsin System***, 72 Wis. 2d 282, 240 N.W.2d 610 (1976), and ***PRN Associates***, Riley also cites ***Klein v. Board of Regents of the University of Wisconsin System***, 2003 WI App 118, 265 Wis. 2d 543, 666 N.W.2d 67. ***Klein*** addressed an exception to sovereign immunity for claims brought under Title VII of the Civil Rights Act of 1964. *See **Klein***, 265 Wis. 2d 543, ¶¶1, 9, 13. Unlike ***Klein***, this case does not involve a Title VII claim. ***Klein***'s holding is therefore inapplicable. We agree with the DNR that, "[c]ontrary to Riley's argument, ***Klein*** did not state a broad rule that all that matters when assessing sovereign immunity is 'the kind of case asserted,' without regard to whether a statute expressly authorizes the suit."