**2020 WI App 56**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2018AP1133

Complete Title of Case:

DARRELL KLEIN, RICHARD MITCHELL, LINDA MITCHELL AND
SCOTT BRETTING,

PLAINTIFFS-RESPONDENTS,

V.

THE WISCONSIN DEPARTMENT OF REVENUE AND
RICHARD CHANDLER, SECRETARY,

DEFENDANTS-APPELLANTS.

| | |
|---|---|
| Opinion Filed: | August 11, 2020 |
| Submitted on Briefs: | November 5, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendants-appellants, the cause was submitted on the briefs of *Joshua L. Kaul*, attorney general, and *Colin T. Roth*, assistant attorney general. |
| Respondent ATTORNEYS: | On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Frank W. Kowalkowski* of *von Briesen & Roper, S.C.*, |

Green Bay, and *Linda I. Coleman* of *Spears, Carlson & Coleman, SC*, Washburn.

COURT OF APPEALS
DECISION
DATED AND FILED

August 11, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    2018AP1133

STATE OF WISCONSIN

Cir. Ct. No.  2016CV83

IN COURT OF APPEALS

---

DARRELL KLEIN, RICHARD MITCHELL, LINDA MITCHELL AND
SCOTT BRETTING,

   PLAINTIFFS-RESPONDENTS,

 V.

THE WISCONSIN DEPARTMENT OF REVENUE AND RICHARD CHANDLER,
SECRETARY,

   DEFENDANTS-APPELLANTS.

---

APPEAL from an order of the circuit court for Ashland County: JOHN M. YACKEL, Judge. *Reversed and cause remanded with directions.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    HRUZ, J.  In response to a federal court decision, the Town of Sanborn (the "Town") decided in 2007 to remove from its property tax rolls all land belonging to the Bad River Band of Lake Superior Tribe of Chippewa Indians (the

"Bad River Band") and its members. The Wisconsin Department of Revenue (the "Department") subsequently issued guidance encouraging municipalities to review, on a property-by-property basis, whether Native American property qualified under federal law for property tax exemption. Nonetheless, the Town continued its blanket exemption for all Bad River Band tribal and member property until it was ordered to return those properties to the tax rolls as part of another lawsuit.

¶2 Darrell Klein and the other taxpayer plaintiffs (collectively, the "Taxpayers") commenced this action against the Department after the Sanborn Town Board disallowed their claims regarding excessive and unlawful taxation. The Taxpayers alleged the Department had failed to act sufficiently to stop the Town's unlawful taxation policy. As a result, they alleged the Department has allowed the non-uniform taxation of property. The Taxpayers asserted they were entitled to recover an alleged $1.5 million in excessive taxes from the Department on behalf of themselves and other taxpayers in Ashland County. They also sought damages for the alleged diminution of their property values, a town-wide reassessment, and a writ of mandamus compelling the Department to comply with its statutory obligations under WIS. STAT. ch. 73 (2017-18).[1] The Taxpayers further sought attorney fees and declaratory relief.

¶3 The circuit court granted the Taxpayers' summary judgment motion, and we agree with the Department that it erred by doing so. Instead, the Department was entitled to summary judgment because sovereign immunity bars the Taxpayers' claims against it for damages and attorney fees, as a matter of law. When the action is one for the recovery of money from the State, as here, the State—including one

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

of its agencies like the Department—may not be sued without its consent (i.e., an express directive by the legislature). The application of sovereign immunity here required the circuit court to dismiss all of the Taxpayers' non-mandamus claims, including their request for attorney fees. Moreover, given the circumstances in this case, any claim for the recovery of unlawful taxes lies against the municipality that collected them, not with the Department.

¶4 As for the Taxpayers' mandamus claim, we conclude they have failed to demonstrate that the Department had a "positive and plain duty" that it failed to perform. Rather, the duties the Taxpayers point to are investigative and prosecutorial functions that have long been treated as discretionary. Accordingly, we conclude that summary judgment was appropriate in the Department's favor on all of the Taxpayers' claims. We reverse and remand with directions for the circuit court to dismiss the claims against the Department.

## BACKGROUND

¶5 Although this appeal presents purely questions of law, we set forth some background information for purposes of framing the legal issues presented. In 2006, a federal appellate court held that property allotted to a Chippewa tribe pursuant to an 1854 treaty with the United States could not be taxed by the State of Michigan pursuant to the terms of that treaty. *See **Keweenaw Bay Indian Cmty. v. Naftaly***, 452 F.3d 514, 525-27 (6th Cir. 2006). The Bad River Band, which had also been allotted reservation land under that treaty and had paid property taxes on that land for years under protest, then requested that the Town remove from its tax rolls all fee simple land within the reservation owned by the Bad River Band or its members.

¶6 The Town complied with the Bad River Band's request. In 2007, the Town passed a resolution directing its assessor to designate as "non-taxable" any land owned by the Bad River Band or its members that had been allotted in fee simple pursuant to the 1854 treaty. Afterward, the Department issued several guidance documents in response to municipal inquiries about the federal court decision. The Department's position was that property allotted under the 1854 treaty was to be presumed exempt and that any municipality bore the burden of proving the exemption no longer applied. The Department stated that if, for example, the property had been transferred out of tribal ownership, it would "likely" lose its exemption and become taxable even if subsequently transferred back to the tribe or its members.

¶7 In 2008, the Department became aware of the blanket exclusion granted by the Town, and it fielded complaints about the Town's assessment practices. The Department was also in contact with the Town's assessor during this time, during which the Town continued to assert that its legal interpretation of the *Keweenaw Bay* opinion was correct. Several years later, the Department ultimately adopted statewide guidance in response to the *Keweenaw Bay* opinion in the Wisconsin Property Assessment Manual (the "Assessment Manual"):

> On February 8, 1887, Congress enacted the General Allotment Act which applies to all Wisconsin tribes. Under that Act, real property that an individual Native American owns on a reservation in fee simple is subject to property tax. However, due to certain language in the Treaty of 1854, real property located within the reservation boundary of Bad River, Lac Courte Oreilles, Lac du Flambeau, and Red Cliff Chippewa bands is <u>exempt</u> if:
>
> - It was allotted before February 8, 1887 under that Treaty,
> - It is owned in fee simple by the tribe or tribal members, and

- There has been no conveyance of the land to nontribal members since it was first allotted under the 1854 Treaty. For example, if the land had been exempt under the provisions of the 1854 Treaty, but was then sold to a nontribal member, the land would lose its exemption and be subject to property tax. Even if the land was later repurchased by an 1854 Tribe, the land would remain subject to property tax.

Assessors should review tax roll information at the Municipality and County along with ownership information at the Register of Deeds office. The information will assist in determining if a property has changed ownership, was subject to property tax, and remains subject to property tax even though re-purchased by an 1854 Tribe.

WISCONSIN PROPERTY ASSESSMENT MANUAL 22-25 to 22-26 (2013) (footnote omitted).

¶8     Despite the Department's guidance endorsing a property-by-property analysis, the Town persisted in its blanket exclusion for tax purposes of Bad River Band property. In 2015, the Town issued a letter expressing its refusal to rescind the 2007 resolution. The Town acknowledged that its resolution contradicted the Department's guidance in the Assessment Manual, but it stated it "respectfully disagree[d]" with the Department's directives.

¶9     Also during 2015, the Taxpayers petitioned the Department to conduct a town-wide reassessment. Following an investigation and a public hearing, the Department declined to order a reassessment. It concluded a reassessment would not promote the public interest, and, noting that the Town's assessor had recently retired, it observed that any potential errors in the tax treatment of certain parcels might be rectified by the new assessor. The Taxpayers did not appeal the Department's determination. Rather, they continued corresponding with the Department regarding particular parcels they believed should be taxed.

¶10 The Department, highlighting that property assessment and taxation is a municipal process, responded that it was in contact with the Town assessor on the issue. Indeed, in 2016, the Department engaged with the Town and its assessor through several letters, acknowledging that the new assessor had inherited the task of a parcel-by-parcel review from his predecessor but stressing the need for uniformity in taxation. When the new assessor responded that the task of gathering and reviewing real estate title data for each parcel affected by the 2007 resolution was "monumental" and would require nearly three years to complete, the Department provided further guidance in an effort to have the review completed by 2018.

¶11 Meanwhile, the Taxpayers paid their 2015 taxes under protest and then filed claims with the Town for excessive and unlawful taxation. The Town denied the claims, and the Taxpayers sought certiorari review. In December 2016, the circuit court concluded that the Town had acted contrary to the Assessment Manual and to the specific written guidance the Department had issued to the Town and its assessor.[2] The Town was ordered to place all properties subject to the 2007 resolution back on the tax roll, unless there was evidence presented that an individual property was exempt from taxation in accordance with the Department's Assessment Manual guidance. The Town did not appeal that decision and order.

¶12 As the certiorari action against the Town proceeded, the Taxpayers filed the present action against the Department and Town entities and officials, purportedly on behalf of all Ashland County taxpayers. As relevant here, the

---

[2] Those proceedings, which occurred in Ashland County Circuit Court case No. 2016CV30, were also conducted by the Honorable John M. Yackel.

6

Taxpayers alleged that the Department was dilatory in its efforts to correct the Town's alleged non-uniform taxation, allowing an unlawful taxation scheme to persist for years.[3]   They asserted that the Department had violated its general supervisory duties contained in WIS. STAT. § 73.03(1), as well as its specific duties relating to the supervision of local assessors under WIS. STAT. § 73.06(1) and (3). The Taxpayers sought declaratory and injunctive relief, a town-wide reassessment, a $1.5 million refund for the allegedly unlawful taxes paid by Ashland County residents, a writ of mandamus compelling the Department to comply with WIS. STAT. ch. 73, and attorney fees.

¶13     The Taxpayers moved for summary judgment against the Department on three claims:  (1) that the Department participated in a violation of the Wisconsin Constitution's uniformity clause; (2) that the Department breached alleged statutory duties under WIS. STAT. §§ 73.03 and 73.06 by failing to correct the Town's non-uniform taxation; and (3) that the Department breached a duty to ensure that the Town's assessors complied with WIS. STAT. § 70.32(1).   The Taxpayers also asserted they were entitled to judgment on their claim for all attorney fees incurred in connection with both the present case and the certiorari action.

¶14     The Department also filed a motion for summary judgment.  The Department argued that any claims for which the Taxpayers sought damages or other monetary relief, including attorney fees, were barred by the doctrine of sovereign immunity.  The Department also asserted that the Taxpayers' request for

---

[3] Given our conclusion that sovereign immunity bars the Taxpayers' claims seeking monetary damages as relief, we need not conduct an exhaustive review of the nature of those claims. Suffice it to say that while the Taxpayers' primary allegation was that the Department had violated the Wisconsin Constitution's uniformity clause, *see* WIS. CONST. art. VIII, § 1, they also advanced claims under various other provisions of the United States Code and the state and federal constitutions, including due process and equal protection claims.  The Taxpayers also initially advanced a takings claim, which they have since abandoned.

mandamus or other injunctive relief failed as a matter of law because the duties the Taxpayers had alleged had been rendered moot by the certiorari decision or were discretionary in nature.

¶15    The circuit court granted the Taxpayers' motion for partial summary judgment. After setting forth numerous facts,[4] the court concluded the Department had violated the Taxpayers' constitutional right to uniform taxation and had abdicated its duties under various provisions of WIS. STAT. §§ 73.03, 73.06, and 70.32. The court determined the Taxpayers were entitled to any damages they could prove at trial, as well as any attorney fees incurred in connection with the present case and the certiorari action. The court set the matter for trial on the issues of the Taxpayers' damages and the amount of any attorney fees.[5]

¶16    Although the circuit court also denied the Department's summary judgment motion, it did not address the Department's arguments regarding the applicability of sovereign immunity or the appropriateness of mandamus relief. The Department petitioned this court for interlocutory review, which we granted. On appeal, the Department argues the court's decision should be reversed because sovereign immunity bars all claims seeking monetary relief and because mandamus

---

[4] Although the circuit court designated its recitation of facts as "findings of fact," we note that circuit courts do not make findings of fact when ruling on a summary judgment motion. *See Camacho v. Trimble Irrevocable Trust*, 2008 WI App 112, ¶11, 313 Wis. 2d 272, 756 N.W.2d 596. On summary judgment, a circuit court should either identify the relevant undisputed facts, or, if the relevant facts are disputed, deny the motion and set the matter for trial. Given that the material facts in this case are all undisputed, such a designation is of no moment.

[5] The circuit court's order dismissed Department secretary Richard Chandler as a party. The Taxpayers have not appealed that determination.

relief is not appropriate on any remaining claims as a matter of law.[6] Consequently, the Department argues it was entitled to summary judgment dismissing all of the Taxpayers' claims against it.

## DISCUSSION

¶17 Whether the circuit court properly granted summary judgment is a question of law this court reviews de novo. ***Racine Cty. v. Oracular Milwaukee, Inc.***, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88. The summary judgment methodology is well established. *See **Tews v. NHI, LLC***, 2010 WI 137, ¶4, 330 Wis. 2d 389, 793 N.W.2d 860. Summary judgment shall be granted to a party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." WIS. STAT. § 802.08(2). The parties here are in agreement about the basic facts; the questions to be decided are purely matters of law.

*I. Sovereign Immunity and the Taxpayers' Claims for Monetary Damages and Attorney Fees*

¶18 Sovereign immunity derives from article IV, section 27 of the Wisconsin Constitution, which states, "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." From this language, our supreme court has developed a rule that the state "cannot be sued

---

[6] Given our disposition of the Taxpayers' various claims, we need not address additional arguments that the Department raises. These include whether certain statutes create a private right of action against the state, or whether the determination in the certiorari action rendered these proceedings moot. We generally do not address issues that are not dispositive. *See **Gross v. Hoffman***, 227 Wis. 296, 300, 277 N.W. 663 (1938).

without its consent." ***City of Kenosha v. State***, 35 Wis. 2d 317, 322, 151 N.W.2d 36 (1967). If the legislature has not specifically consented to the suit, then sovereign immunity generally deprives a court of personal jurisdiction over the state. ***PRN Assocs. LLC v. DOA***, 2009 WI 53, ¶51, 317 Wis. 2d 656, 766 N.W.2d 559.[7]

¶19     "A suit against a state agency constitutes a suit against the State for purposes of sovereign immunity." ***Id.***[8] The Taxpayers have not directed us to any statute specifically authorizing their lawsuit against the Department. Rather, they argue that there is "no sovereign immunity for monetary claims based upon a state denying individuals their constitutionally guaranteed rights."

---

[7] WISCONSIN STAT. § 775.01 discusses actions against the state:

> Upon the refusal of the legislature to allow a claim against the state the claimant may commence an action against the state by service as provided in s. 801.11(3) and by filing with the clerk of court a bond, not exceeding $1,000, with 2 or more sureties, to be approved by the attorney general, to the effect that the claimant will indemnify the state against all costs that may accrue in such action and pay to the clerk of court all costs, in case the claimant fails to obtain judgment against the state.

"Section 775.01 is limited to claims which, if valid, would render the State a debtor to the claimant." ***Brown v. State***, 230 Wis. 2d 355, 364, 602 N.W.2d 79 (Ct. App. 1999); *see also* WIS. STAT. § 16.007 (establishing a claims board, which must review and make a recommendation on monetary claims in excess of $10 before the claim may be considered by the legislature).

The Taxpayers do not assert they have complied with these statutes, and the parties do not discuss these statutes on appeal. We therefore decline to further address them. *See* ***Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (observing that appellate courts will not abandon their neutrality to develop arguments on a party's behalf).

[8] The state may create agencies with proprietary powers or functions sufficiently independent of the state such that they can be sued, but the Department is not such an entity. ***Appel v. Halverson***, 50 Wis. 2d 230, 235, 184 N.W.2d 99 (1971). Moreover, the defense of sovereign immunity can be waived, but the Taxpayers do not argue waiver is applicable here. *See* ***id.***

¶20 The exception to sovereign immunity that the Taxpayers advance appears to be a novel construct. There is an existing exception to sovereign immunity that permits courts to "entertain actions to enjoin state officers and state agencies from acting beyond their constitutional or jurisdictional powers," but this exception requires that a complaint allege "action outside the lawful authority of the officer or agency." *Appel v. Halverson*, 50 Wis. 2d 230, 235, 184 N.W.2d 99 (1971). Here, the Taxpayers have not alleged that the Department has done something that exceeded the bounds of its authority; rather, they argue the Department failed to do what was required of it. In other words, they fault the Department for not exercising the full limits of its authority, rather than it exceeding its authority.

¶21 State agencies, although created by the legislature, are not necessarily instrumentalities of the legislature, and they generally cannot spend money not appropriated to them by the legislature. *See Lister v. Board of Regents of Univ. of Wis. Sys.*, 72 Wis. 2d 282, 293, 240 N.W.2d 610 (1976). For this reason, we require that the legislature clearly express its intention to subject itself—qua the state—to liability. *See Erickson Oil Prods., Inc. v. State*, 184 Wis. 2d 36, 52, 516 N.W.2d 755 (Ct. App. 1994); *Metzger v. Wisconsin Dep't of Taxation*, 35 Wis. 2d 119, 131, 150 N.W.2d 431 (1967). "It is the role of the legislature, rather than that of the court, to consent to suit against the State." *PRN Assocs.*, 317 Wis. 2d 656, ¶66.

¶22 Given the foregoing, Wisconsin courts have looked to the nature of the relief sought when determining whether sovereign immunity bars an action. For example, when a plaintiff brings suit against the state seeking a declaratory judgment to resolve the constitutionality or the proper interpretation and application of statutory provisions, it is necessary to "engage in a fiction that allows such actions to be brought against the … agency charged with administering the statute" on the

theory that a suit is not against the state when the agency is alleged to have acted outside the bounds of its constitutional or jurisdictional authority. *Lister*, 72 Wis. 2d at 303. The public policy considerations attendant to sovereign immunity do not apply with equal force to such actions for declaratory relief, *id.* at 304, and if the only consequence flowing from the desired declaration of rights is to determine the plaintiff's right to recover damages, the claim is not justiciable, *id.* at 308.

¶23 The Department cites two cases that illustrate the distinction between suing the state for monetary damages and suing for declaratory or injunctive relief. The first, *Town of Eagle v. Christensen*, 191 Wis. 2d 301, 529 N.W.2d 245 (Ct. App. 1995), bears a striking resemblance to this case. There, the plaintiffs sought declaratory relief for an alleged uniformity violation that resulted when the Department failed to cure erroneous classifications of property made by local assessors.[9] *Id.* at 311. Citing *Lister*, we concluded that sovereign immunity did not bar the plaintiffs' suit against the Department "because damages are not being sought from the state. The complaint alleges that the state officers are acting in violation of the constitution and certain statutes, thus injunctive and declaratory relief are appropriate and are not precluded by sovereign immunity." *Id.* at 320.

¶24 We reached a similar result in *Manitowoc Co. v. City of Sturgeon Bay*, 122 Wis. 2d 406, 362 N.W.2d 432 (Ct. App. 1984). Manitowoc Company paid certain property taxes under protest annually, and when the city denied its refund claims, it filed suit against the city and the Department. *Id.* at 410. Manitowoc Co.

---

[9] The Taxpayers misread *Town of Eagle v. Christensen*, 191 Wis. 2d 301, 529 N.W.2d 245 (Ct. App. 1995), in asserting that the decision merely "clarifies the use of the legal fiction that a state agency is not 'the state' in the context of seeking relief for a confirmed constitutional violation." *Town of Eagle* does not permit a conclusion that all claims seeking monetary relief for claimed constitutional violations are permitted to proceed. Rather, that decision recognizes that the success or failure of a claim against the state, for sovereign immunity purposes, turns upon the nature of the relief sought. *Id.* at 320.

sought to recover the alleged overpayments from the city, and it sought declaratory relief against the Department directing the agency to declare its property exempt from future assessments. *Id.* Recognizing that the applicability of sovereign immunity depends upon the nature of the relief sought, we concluded that because Manitowoc Co. sought a refund only from the municipality, sovereign immunity did not apply. *Id.* at 412. "[O]nly the city is liable for an erroneous classification." *Id.*

¶25 The Taxpayers rely on *Zinn v. State*, 112 Wis. 2d 417, 334 N.W.2d 67 (1983), but that case supports the Department's position that the Taxpayers' claims seeking damages and attorney fees are barred by sovereign immunity. In *Zinn*, the plaintiff alleged an unlawful taking of property by the state without just compensation, contrary to the Wisconsin Constitution. *Id.* at 421-22. The State asserted the plaintiff could have no monetary remedy because it had not consented to the suit, and the claim seeking just compensation was therefore barred by sovereign immunity. *Id.* at 432.

¶26 After concluding that the plaintiff had no remedy under state statutes, our supreme court nonetheless determined that "the doctrine of sovereign immunity has only limited applicability to actions against the state which allege a constitutional taking of private property without just compensation." *Id.* at 435. The court endorsed the view that the constitutional directive that persons receive just compensation for takings of their private property was "self-executing." *Id.* at 435-36. Because the authorization for such suits was located in the constitution itself, no express statutory provision for its enforcement was necessary. *Id.* at 436.

¶27 Although the Taxpayers emphasize the Department's supposedly "egregious conduct" in allowing a uniformity violation to persist, they fail to identify any self-executing constitutional provision relevant to their claims. The

Wisconsin Constitution's uniformity clause states, as relevant here: "The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods." WIS. CONST. art. VIII, § 1. No language in that section is analogous to the constitution's command that "[t]he property of no person shall be taken for public use without just compensation therefor." *See* WIS. CONST. art. I, § 13. "Just compensation" is a constitutional directive contained within in the takings clause; nowhere does the uniformity clause authorize general damages for an alleged violation of the uniformity principle.

¶28    The Department is therefore correct that, with respect to the alleged egregiousness of the Department's conduct, such an inquiry into the merits of the Taxpayers' claims is unnecessary and irrelevant. Also, we agree with the Department's statement that "immunity does not rise and fall on whether someone can recover money some other way." The legislature could have made the Department (and, by extension, the state) liable for any errors or missteps in the exercise of the Department's functions that produce non-uniform taxation, but it has not done so. "If there are inequities resulting from the doctrine of sovereign immunity, it is the sole function of the legislature to act, not the courts." ***Erickson Oil***, 184 Wis. 2d at 54.

¶29    In focusing on the alleged egregiousness of the Department's conduct, the Taxpayers posit that suits for damages as a result of alleged unconstitutional conduct are permitted under state and federal law. First, they rely on a footnote in ***Old Tuckaway Assocs. Ltd. Partnership v. City of Greenfield***, 180 Wis. 2d 254, 509 N.W.2d 323 (Ct. App. 1993), which discussed generally the notion that, under federal law, a violation of certain constitutional dictates may give rise to an action for damages against the individual that caused the violation, even in the absence of

14

a statute authorizing such a suit.[10] *See id.* at 269 n.4. That discussion, however, did not touch upon sovereign immunity principles; nor need it have, as *Old Tuckaway* involved only a lawsuit against a municipality. "Unlike the State, municipal bodies are not protected by sovereign immunity." *Umansky v. ABC Ins. Co.*, 2008 WI App 101, ¶38, 313 Wis. 2d 445, 756 N.W.2d 601, *aff'd and remanded*, 2009 WI 82, 319 Wis. 2d 622, 769 N.W.2d 1.

¶30    The Taxpayers also rely on *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990), for the proposition that sovereign immunity does not apply to their action for damages resulting from improper taxation. There, the plaintiff successfully sued the State of Florida, alleging its liquor excise tax violated the federal commerce clause. *Id.* at 22. However, the Florida Supreme Court, while awarding injunctive relief, refused to provide a refund of the taxes the plaintiff had already paid. *Id.* The United States Supreme Court subsequently concluded that, as a matter of due process, Florida was obligated "to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." *Id.* at 31.

¶31    There are two problems with the Taxpayers' reliance on *McKesson*. First, the Supreme Court explained that Florida courts had "accepted jurisdiction over this suit which sought monetary relief from various state entities." *Id.* at 26. Because Florida conceded that it had waived any sovereign immunity defense, the Court did not discuss the application of the doctrine. *See id.* at 49 n.33. Second, and perhaps more importantly, an agency of the State of Florida had collected the

---

[10] The Taxpayers' federal claim, which was based upon an alleged violation of 42 U.S.C. § 1983 (2018), did not abrogate the state's sovereign immunity. That statute was not intended to "disregard the well-established immunity of a State from being sued without its consent." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67 (1989). The Taxpayers appear to have conceded that sovereign immunity bars their federal 42 U.S.C. § 1983 claim.

tax. Here, it is undisputed that the Department did not and does not directly collect property taxes, and, therefore, it has no tax monies to refund.

¶32 Rather than support the Taxpayers' claims, all of these cases highlight that if the Taxpayers have a monetary remedy for the alleged unlawful taxation, it lies against the Town and the Town alone. Wisconsin law provides such mechanisms for relief: WIS. STAT. § 74.35 describes how a taxpayer may recover for an unlawful tax levy and collection from "the taxation district which collected the tax"; and WIS. STAT. § 74.37 provides a mechanism for a claim for an excessive assessment "against the taxation district." Indeed, the Taxpayers successfully advanced such claims against the Town in the certiorari action. Although the Taxpayers are highly critical of the Town's handling of those claims, the Town's refusal to award them relief under those statutes does not ipso facto prevent application of sovereign immunity in a separate action against the state.

¶33 The foregoing principles also defeat the Taxpayers' request for attorney fees. Similar to money damages, "costs may not be taxed against the state or an administrative agency of the state unless expressly authorized by statute." *Martineau v. State Conservation Comm'n*, 54 Wis. 2d 76, 79, 194 N.W.2d 664 (1972). Here, the only statutory provision to which the Taxpayers point is a generic statute concerning mandamus relief, which states that the successful mandamus plaintiff "shall recover damages and costs." *See* WIS. STAT. § 783.04. Because we conclude herein that the Taxpayers' request for a writ of mandamus fails on its merits, whether § 783.04 applies to the Department in this case is irrelevant.

¶34 The Taxpayers assert they are also entitled to attorney fees under *Weinhagen v. Hayes*, 179 Wis. 62, 190 N.W. 1002 (1922), as well as the private

16

attorney general doctrine.[11] Judicially created doctrines like the one adopted in *Weinhagen* and the private attorney general doctrine do not constitute the explicit statutory authorization from the legislature necessary for the recovery of attorney fees against the state. Regardless of how appropriately the Taxpayers believe those doctrines apply to the facts of this case, attorney fees are simply unavailable in the absence of an explicit legislative directive, and they have pointed to none.

¶35 Accordingly, we conclude that the Taxpayers' claims seeking money damages against the Department, including a refund of the allegedly unlawful taxes paid and attorney fees, are barred by the doctrine of sovereign immunity. If the Taxpayers seek monetary relief, the proper entity to proceed against was, and remains, the Town and the Town alone.

## II. Entitlement to Mandamus

¶36 A writ of mandamus is a discretionary writ that is issued to compel the performance of a particular act by a lower court or governmental officer or body. *See Miller v. Smith*, 100 Wis. 2d 609, 621, 302 N.W.2d 468 (1981); *Mandamus*, BLACK'S LAW DICTIONARY (11th ed. 2019). A writ of mandamus will issue only upon showing the following prerequisites: (1) a clear legal right; (2) a positive and plain duty; (3) substantial damages; and (4) the absence of any other adequate remedy at law. *Law Enf't Standards Bd. v. Village of Lyndon Station*, 101 Wis. 2d 472, 494, 305 N.W.2d 89 (1981). Additionally, the duty to act on the part of the

---

[11] *Weinhagen v. Hayes*, 179 Wis. 62, 190 N.W. 1002 (1922), acknowledged the general rule that attorney fees are not recoverable, but it noted an exception when the wrongful acts of the defendant have forced the plaintiff into litigation with others, or made it necessary to incur expense to protect his or her interests in relation to others. *Id.* at 65.

For a discussion of the private attorney general doctrine, including its common law origins, see *Estate of Miller v. Storey*, 2017 WI 99, ¶¶54-60 & n.25, 378 Wis. 2d 358, 903 N.W.2d 759.

government official must be "clear and unequivocal"; a circuit court erroneously exercises its discretion by issuing such a writ when the duty to be performed requires the exercise of discretion. *Id.*

¶37     The Department asserts that the Taxpayers have never identified—at least not with sufficient precision—any statutory duty that it supposedly ignored. The Taxpayers, on the other hand, present "examples" of what they argue are mandatory duties under WIS. STAT. §§ 73.03, 73.06 and 70.32.[12]   Because these statutes are wide-ranging (§ 73.03 alone has more than seventy provisions describing the Department's powers and duties), we confine our review to those statutory provisions that the Taxpayers affirmatively raise on appeal.  *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (holding that appellate courts will not address undeveloped arguments).

¶38     The Taxpayers argue that certain of WIS. STAT. § 73.03's provisions are not discretionary and required the Department to act.  Specifically, they point to subsection (3), which states it is the Department's duty:

> To direct proceedings, actions and prosecutions to be instituted to enforce the laws relating to the penalties, liabilities and punishment of public officers, persons, and officers or agents of corporations for failure or neglect to comply with the provisions of the statutes governing the return, assessment and taxation of property; and to cause complaints to be made against assessors, members of boards of review, assessors of incomes, and members of county boards, or other assessing or taxing officers, to the proper circuit judge for their removal from office for official misconduct or neglect of duty.

---

[12] In making this argument, the Taxpayers assert we are bound by the circuit court's findings of fact.  Again, the appropriateness of summary judgment presents a question of law; a circuit court does not make factual findings on summary judgment, and if it does, we are not bound by them.  The existence of any genuine dispute of material fact precludes summary judgment. Again, the underlying facts in this case are not disputed.

The Taxpayers also direct us to subsections (4), (9), (10) and (11), which collectively empower the Department to require district attorneys to assist it in prosecuting violations of the tax laws and authorize the Department to collect evidence and investigate potential improper assessment practices or violations of the tax laws. Finally, the Taxpayers cite subsection (12), which provides that the Department must "carefully examine into all cases where evasion or violation of the laws for assessment and taxation of property is alleged, complained of or discovered, and to ascertain wherein existing laws are defective or are improperly or negligently administered."

¶39 The Taxpayers also direct us to WIS. STAT. § 73.06. Under § 73.06(1) and (2), the Department has "complete supervision and direction of the work of the local assessors," and it may access "all public records, books, papers and offices throughout each district" in support of its investigatory functions relative to the assessment and taxation of general property. The Taxpayers primarily focus on § 73.06(3), though, which states that the Department "shall examine and test the work of assessors during the progress of their assessments and ascertain whether any of them is assessing property at other than full value or is omitting property subject to taxation from the roll." If the Department concludes any property has been omitted or not assessed according to the law, it "shall bring the same to the attention of the local assessor of the proper district and if such local assessor shall neglect or refuse to correct the assessment they shall report the fact to the board of review." Sec. 73.06(3).

¶40 We agree with the Department that these broad grants of investigative and prosecutorial authority are not the types of activities that can be compelled by mandamus, as each of these duties requires the Department to use discretion, even if the existence of a violation is clear. In *State ex rel. Kurkierewicz v. Cannon*, 42

Wis. 2d 368, 166 N.W.2d 255 (1969), the petitioner sought to compel a district attorney to investigate the shooting death of her son. *Id.* at 373. The court, however, held that such broad investigatory powers as are enjoyed by district attorneys are not amenable to mandamus.[13] *Id.* at 379. Even when a statute requires the government actor to take some specific action upon a condition occurring—there, the district attorney's obligation to call an inquest if there was any reason to believe the death was a result of a criminal act—the act is no less discretionary. *Id.* at 381-84.

¶41 Our supreme court reached a similar answer when asked to decide whether the civil enforcement of town ordinances is a nondiscretionary, ministerial duty that can be compelled by mandamus. *See Vretenar v. Hebron*, 144 Wis. 2d 655, 658, 424 N.W.2d 714 (1988). As a general matter, the duty to prosecute "is vested with discretion as to the manner in which it is exercised." *Id.* at 663. The government is not possessed of unlimited resources; state actors are not required to prosecute all cases in which it appears the law has been violated.[14] *See id.* at 664. As is clear from *Kurkierewicz* and *Vretenar*, in the area of criminal and civil investigative and enforcement activities, government actors invariably employ discretion so as to make those activities not amenable to mandamus relief absent a statute compelling a specific action under a specific set of facts.

---

[13] Certain language in *State ex rel. Kurkierewicz v. Cannon*, 42 Wis. 2d 368, 166 N.W.2d 255 (1969), has been withdrawn to the extent it suggests that a district attorney may exercise his or her discretion free of judicial interference. *See State v. Kenyon*, 85 Wis. 2d 36, 45 & n.4, 270 N.W.2d 160 (1978).

[14] The fact that the source of authority includes the word "shall" does not necessarily establish that the duty is susceptible to mandamus relief. For example, despite the charge that district attorneys "shall" prosecute all criminal actions before a county court, our supreme court has not interpreted this language to limit the prosecutor's discretion on whether to prosecute a particular case. *Vretenar v. Hebron*, 144 Wis. 2d 655, 665-66, 424 N.W.2d 714 (1988).

¶42    We view the Department's "duties" to which the Taxpayers point here as analogous to the investigative and enforcement activities at issue in these prior cases, not as directives that are so clear as to strip any discretion from the Department.    Although the Taxpayers suggest WIS. STAT. § 73.06(3) left the Department with no choice but to refer the matter to the Town board of review, such a referral was still contingent upon the Department concluding that the assessor's inaction constituted neglect or a refusal to correct the assessment, a conclusion that is itself a discretionary determination.    The statute implies that the Department is free to use measures short of a formal referral to secure compliance.

¶43    The Taxpayers also cite WIS. STAT. § 70.32(1) in support of their request for mandamus relief.    That statute imposes no duties upon the Department.    Rather, it states that "[r]eal property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtained therefor at private sale."    Although the Taxpayers allege that the Department abdicated its oversight and supervisory functions in relation to the Town's assessor, § 70.32(1) provides no basis for mandamus relief against the Department.    Indeed, while the Taxpayers declared in their brief that "[o]ne of the obligations of [the Department] is to guarantee that assessors comply with WIS. STAT. § 70.32(1) and adhere to the [Assessment Manual]," they provided no citation in support of that proposition.

¶44    Finally, the Taxpayers assert that even if all of the Department's duties are discretionary, they are nonetheless entitled to mandamus relief because the Department failed to exercise its discretion.    *See State ex rel. Althouse v. City of Madison*, 79 Wis. 2d 97, 106, 255 N.W.2d 449 (1977) ("[M]andamus is appropriate to compel the exercise of discretion.").    Even assuming that the

Taxpayers are correct as a legal matter—and mandamus can be used to compel the exercise of discretion where there is a mandate that the government actor use discretion and there is no evidence that the actor has even considered the matter—the Taxpayers would not be entitled to mandamus relief under the circumstances of this case.

¶45   Specifically, the Taxpayers fail to identify or explain any material failing in the Department's response to the Town's allegedly rogue tax policy, other than its ultimate decision not to order a reassessment—a decision that the Taxpayers did not appeal. This situation is not one where the Department did nothing, as the Taxpayers allege; rather, the record is replete with efforts the Department took to obtain compliance with the guidance it had issued, both via letter and via adoption of specific provisions of the Assessment Manual.[15]  Although the Department did not go as far as the Taxpayers would have liked (in the sense that it did not deploy the full panoply of enforcement and prosecution tools available to it), the record does not show the Department failed, as a general matter, to exercise its discretion in dealing with the situation presented in the Town.

## CONCLUSION

¶46   We conclude the circuit court erred by granting the Taxpayers' motion for partial summary judgment. Their claims for monetary damages and attorney fees are barred by the doctrine of sovereign immunity, and the Department is entitled to summary judgment dismissing the Taxpayers' claims on that ground. Moreover, the Department is entitled to summary judgment on the Taxpayers' claim

---

[15] Indeed, the Department went so far as to warn the assessor he was not following the requirements for assessors, was engaging in misconduct, and was risking his assessor certification by continuing to ignore the Department's guidance.

seeking mandamus relief, as they have failed to demonstrate that the Department has a "positive and plain duty" that can be compelled by a writ of mandamus. Accordingly, we reverse and remand with directions for the circuit court to dismiss the claims against the Department.

*By the Court.*—Order reversed and cause remanded with directions.