COURT OF APPEALS
DECISION
DATED AND FILED

October 29, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP648**

**STATE OF WISCONSIN**

Cir. Ct. No. **2022CV280**

**IN COURT OF APPEALS
DISTRICT III**

---

**LOKI FIONTAR, LLC,**

    **PLAINTIFF-APPELLANT,**

  **V.**

**DEPARTMENT OF NATURAL RESOURCES AND PRESTON COLE,**

    **DEFENDANTS-RESPONDENTS.**

---

APPEAL from an order of the circuit court for Outagamie County: MARK J. McGINNIS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Loki Fiontar, LLC, ("Loki") appeals an order dismissing its claims against the Wisconsin Department of Natural Resources and

the Department's then-secretary, Preston Cole (collectively, "the DNR"). The circuit court determined that Loki's claims against the DNR are barred by the doctrine of sovereign immunity. We agree, and we therefore affirm the order dismissing Loki's claims.

## BACKGROUND

¶2      The following background facts are taken from Loki's complaint and its attachments, and they are assumed to be true for purposes of this appeal. *See Peterson v. Volkswagen of Am., Inc.*, 2005 WI 61, ¶15, 281 Wis. 2d 39, 697 N.W.2d 61. Loki is the owner of a landfill located in Combined Locks, Wisconsin ("the Landfill"). The Landfill "is an older site" and was operated for many years by another entity, "API." The Landfill's primary purpose, at the time of its creation, was for API's use in depositing sludge, a waste byproduct generated from paper mill operations.

¶3      In 1984, the DNR approved the Landfill to accept approximately 141,200 cubic yards of paper mill sludge. In 1985, API obtained a separate approval to deposit "flyash," another paper mill byproduct, in the Landfill. Thereafter, however, the "majority" of the deposits in the Landfill were sludge, rather than flyash—a fact that, according to Loki, the DNR either knew or should have known.

¶4      After being "introduced" to the Landfill by the DNR, Loki purchased the Landfill in 2019. The DNR "was aware that Loki intended to use the Landfill for continued paper[ ]mill sludge deposits, with it anticipated that the Landfill could accept an additional 50,000 cubic yards of sludge before being 'capped'—a process of closing the Landfill." Before Loki completed its purchase of the Landfill, the DNR objected to the purchase and "filed paperwork" in court opposing it. The DNR ultimately withdrew its objection, however, and a court confirmed Loki's purchase.

¶5      Following the purchase, the DNR withheld Loki's license for the Landfill for eighteen months, required Loki to expend additional time and money on the Landfill, and delayed providing its departmental file to Loki.  The DNR never asserted—either before Loki's purchase of the Landfill or during the ensuing eighteen months—that it would be unsafe for the Landfill to accept additional sludge deposits beyond those already in the Landfill, that the Landfill had been redesigned to no longer accept sludge, or that the Landfill could not safely accept additional sludge in its current state.

¶6      On January 25, 2021, the DNR issued Loki a solid waste facility operation license for the Landfill, with an effective date of October 1, 2020.[1]  The license was sent to Loki with a letter from the DNR, which was also dated January 25, 2021.  The letter, which is attached to Loki's complaint, advised Loki:

> You have indicated to the [DNR] your intent to accept only paper mill sludge.  Doing so would not be compliant with your plan of operation and would be in violation of [WIS. STAT. § 289.30(9)], unless the plan of operation is modified and approved by the [DNR] to accommodate the disposal of paper mill sludge rather than mostly ash in the [L]andfill.

¶7      The letter then explained that the "existing plan of operation" for the Landfill had been modified, with the DNR's approval, on February 15, 1985.  The letter further explained:

---

[1]  Loki's complaint characterizes this license as "unqualified."  But the license, which is attached to the complaint, expressly states that it is "subject to and conditioned upon compliance with the provisions of [WIS. STAT. ch. 289 (2021-22)] and [WIS. ADMIN. CODE chs. NR 500-590], any plan approval and modifications thereof, and any special order and modifications thereof issued by the [DNR]."  As the DNR correctly notes, any document attached to a complaint and "made part thereof" "prevails over inconsistent averments in the complaint."  *See Peterson v. Volkswagen of Am., Inc.*, 2005 WI 61, ¶15, 281 Wis. 2d 39, 697 N.W.2d 61.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

The 1985 plan modification was based on a substantial and permanent change in the characteristics of the waste approved for acceptance at the [L]andfill. Condition 5 of the February 15, 1985 plan modification approval limits the waste acceptable for disposal to boiler ash and a [sic] "small amounts of dewatered sludge during times when the boiler is down for maintenance and repair." This limitation remains in effect to this day and would prevent the acceptance of the waste that we understand to be under consideration for acceptance from the Midwest Paper Group ….

The 1985 plan modification represented a redesign of the landfill from a paper mill sludge landfill to a boiler ash landfill. These two waste types behave entirely differently when landfilled, and [the Landfill] which is currently designed to accept ash cannot be safely utilized for the disposal of paper mill sludge without substantial redesign.

¶8 Accordingly, the DNR's letter informed Loki that the license enclosed with the letter allowed the Landfill "to be operated in accordance with its current plan of operation that allows accepting [fly]ash and only small amounts of dewatered paper mill sludge." The letter described the modifications that would be required for the Landfill to accept paper mill sludge and reiterated that "[t]he modified design must be approved by the [DNR], and any necessary construction completed, documented and approved by the [DNR], before waste filling can begin." The letter advised Loki that WIS. STAT. § 289.30(9) "requires the operator of a licensed landfill to operate in compliance with the approved plan of operation," which meant that Loki could operate the Landfill "under the attached license only in accordance with the conditions of the modified plan of operation attached to this letter," including "the limitation that the [L]andfill only accepts ash and small amounts of dewatered paper mill sludge." Finally, the letter informed Loki that "[f]ailure to comply with [the] plan of operation could result in suspension or revocation of [Loki's] operating license under [WIS. STAT. § 289.31]."

¶9 According to Loki's complaint, a meeting between Loki, the DNR, and other interested parties was scheduled to take place in February 2021 to address the DNR's January 25, 2021 letter. The DNR, however, canceled the meeting "based on Loki's involvement of legal counsel in the dispute." Thereafter, the DNR issued a "notice" to Loki in June 2021 and issued another "notice" in December 2021 that "asserted problems with the site."

¶10 It is undisputed that Loki did not attempt to obtain review under WIS. STAT. ch. 227 of its license, of the DNR's January 25, 2021 letter, or of the June 2021 and December 2021 notices. Instead, in March 2022, Loki filed the instant lawsuit against the DNR, asserting four causes of action.

¶11 Count One of Loki's complaint—a claim for declaratory judgment and injunctive relief—sought: (1) a declaration setting aside the January 25, 2021 letter and the June 2021 and December 2021 notices; (2) a declaration "[h]olding the [DNR] solely responsible for any regulatory sanction or penalty issued related to the Landfill, its ownership and operations, and for reimbursement of past licensing fees paid by Loki"; and (3) "any other equitable relief necessary, including but not limited to the ordering of injunctive relief and the [DNR's] abatement of a nuisance condition created by the [DNR]."

¶12 Count Two of Loki's complaint asserted a nuisance claim. It alleged that for the past four decades, the DNR had been responsible for the Landfill's oversight and had a general duty to enforce Wisconsin's environmental laws and policies. According to Loki's complaint, the DNR "failed to adhere to that duty and instead allowed for the use of the Landfill, by others, in a manner that was substantially certain to cause environmental harm." Loki alleged that the DNR's past failures "have now interfered with Loki's interest in the private use and

enjoyment of the Landfill, and Loki cannot use the Landfill as intended." Loki therefore asserted that the DNR had "created and maintained a nuisance" at the Landfill and was "responsible for any and all costs of abatement."

¶13 Count Three of Loki's complaint—denominated "Estoppel/Bad Faith"—alleged that Loki was entitled to "injunctive relief and/or a declaration that estops the [DNR]" from taking a position "that would inhibit the use of the Landfill as intended, and/or that would be considered not taken in good faith."

¶14 Finally, Count Four of Loki's complaint—denominated "Fraudulent Inducement/Interference with Property"—alleged that Loki had purchased the Landfill "after having been introduced to the site by the [DNR] and following the [DNR's] withdrawal of any objection to the purchase." Because the DNR had not "mentioned or otherwise objected to the use of the Landfill for acceptance of sludge" prior to the purchase, Loki asserted that the DNR "fraudulently induced or otherwise damaged Loki, as a bona fide purchaser of the Landfill." According to Loki, these actions "have damaged Loki in multiple ways, to include incurring costs, expenses, and fees." Loki further alleged that under WIS. STAT. § 840.03, it was "entitled to other additional remedies against the [DNR], to include an award of restitution; a directive that the [DNR] restrain on interference with Loki's rights in, on or to the land; and a general award of damages."

¶15 Ultimately, Loki's complaint sought the following relief: (1) a declaration of Loki's rights and interests related to the Landfill; (2) an order directing the DNR to abate the nuisance; (3) reimbursement for Loki's "costs incurred to-date … for responding to and/or otherwise owning the Landfill"; (4) all costs of investigation and litigation associated with this lawsuit, including attorney fees and expert witness fees; (5) "[i]njunctive relief as necessary to address the

Landfill and [DNR] action going[ ]forward"; and (6) "[p]rejudgment interest, costs, and whatever other damages are deemed just and equitable."

¶16    The DNR moved to dismiss Loki's complaint, arguing that the doctrine of sovereign immunity barred all of Loki's claims.  The DNR also argued that Loki's complaint failed to state a claim upon which relief could be granted. After briefing and oral argument by the parties, the circuit court granted the DNR's motion to dismiss in an oral ruling, concluding that Loki's claims were barred by sovereign immunity.  The court later entered a written order dismissing Loki's claims.  Loki now appeals.

### DISCUSSION

¶17    "A motion to dismiss on the grounds of sovereign immunity is a challenge to a court's personal jurisdiction." ***Hoops Enters., III, LLC v. Super W., Inc.***, 2013 WI App 7, ¶6, 345 Wis. 2d 733, 827 N.W.2d 120.  "We independently review a circuit court's denial of a motion to dismiss for lack of personal jurisdiction." ***Id.***  On review, we must accept as true all facts alleged in Loki's complaint, and we may also consider any documents "attached to the complaint and made part thereof." *See* ***Peterson***, 281 Wis. 2d 39, ¶15 (citation omitted).

¶18    Sovereign immunity derives from article IV, § 27 of the Wisconsin Constitution, which states that "[t]he legislature shall direct by law in what manner and in what courts suits may be brought against the state." ***Klein v. DOR***, 2020 WI App 56, ¶18, 394 Wis. 2d 66, 949 N.W.2d 608 (quoting WIS. CONST. art. IV, § 27). "From this language, our supreme court has developed a rule that the state 'cannot be sued without its consent.'" ***Id.*** (citation omitted).  Thus, if the legislature has not specifically consented to a suit, sovereign immunity generally deprives a court of personal jurisdiction over the state. ***Id.***  Once sovereign immunity is properly raised

as a defense, the plaintiff "must point to a legislative enactment authorizing suit against the state to maintain his or her action."[2] **Turkow v. DNR**, 216 Wis. 2d 273, 281, 576 N.W.2d 288 (Ct. App. 1998).

¶19 Here, we conclude that the circuit court properly granted the DNR's motion to dismiss on sovereign immunity grounds. As the DNR correctly notes, Loki has not cited *any* statute permitting *any* of its claims against the DNR. *See id.* And, to the extent Loki's complaint asserts tort claims or claims for monetary damages, case law clearly holds that sovereign immunity bars those claims.

¶20 For instance, Count Two of Loki's complaint asserts a claim against the DNR for nuisance. Nuisance, however, is a tort, **Bostco LLC v. Milwaukee Metro. Sewerage Dist.**, 2013 WI 78, ¶28, 350 Wis. 2d 554, 835 N.W.2d 160, and "[t]he state has not given statutory consent to suit in tort," **Carlson v. Pepin County**, 167 Wis. 2d 345, 356, 481 N.W.2d 498 (Ct. App. 1992).

¶21 Count Four of Loki's complaint, in turn, purports to assert a claim for "Fraudulent Inducement/Interference With Property." We agree with the DNR that the precise nature of this claim is unclear. If Loki intended to assert a claim for fraud in the inducement or tortious interference with contract, both of those claims are torts and are therefore barred by sovereign immunity. *See Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶64, 305 Wis. 2d 538, 742 N.W.2d 294 (referring

---

[2] For purposes of sovereign immunity, a suit against a state agency constitutes a suit against the state. **Klein v. DOR**, 2020 WI App 56, ¶19, 394 Wis. 2d 66, 949 N.W.2d 608. In addition, a suit "against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." **Hoeft v. City of Beaver Dam**, No. 2014AP2790, unpublished slip op. (WI App June 25, 2015) (emphasis omitted; quoting **Will v. Michigan Dep't of State Police**, 491 U.S. 58, 71 (1989)); *see also* WIS. STAT. RULE 809.23(3)(b) (explaining that an unpublished opinion authored by a member of a three-judge panel and issued on or after July 1, 2009, may be cited for its persuasive value). Loki's complaint specifies that the DNR's then-secretary was named as a defendant "in his official capacity only."

to tortious interference with contract as a "contract-derived tort claim[]"); ***Below v. Norton***, 2008 WI 77, ¶34, 310 Wis. 2d 713, 751 N.W.2d 351 (characterizing fraud in the inducement as "an independent cause of action in tort" (citation omitted)). Furthermore, while Count Four of Loki's complaint cites WIS. STAT. § 840.03, the DNR correctly notes—and Loki does not dispute—that § 840.03 "says nothing about consenting to suit against the State."

¶22   In addition, while Loki's complaint seeks damages, costs, and attorney fees, this court has held that sovereign immunity bars such claims absent a specific statutory provision allowing them. *See **Klein***, 394 Wis. 2d 66, ¶33. Loki has not pointed to any statutory provision permitting it to recover damages, costs, and attorney fees from the DNR. Although the legislature has consented to suits to recover money from the state under the "specific claims procedure" in WIS. STAT. §§ 16.007 and 775.01, *see **State v. P.G. Miron Constr. Co.***, 181 Wis. 2d 1045, 1053, 512 N.W.2d 499 (1994), Loki does not argue that those statutes are applicable here or that it followed the procedure set forth therein.

¶23   Instead, Loki emphasizes that its complaint also seeks declaratory and injunctive relief against the DNR. We agree with the DNR, however, that subject to a narrow exception discussed below, "[w]here an entity wants to challenge agency action, [WIS. STAT. ch. 227's] judicial review procedures … provide the exclusive means for doing so. A declaratory action cannot be used instead." WISCONSIN STAT. § 227.52 authorizes judicial review of "[a]dministrative decisions which adversely affect the substantial interests of any person." The judicial review procedure set forth in ch. 227 "constitutes the exclusive method for judicial review of agency determinations." ***Turkow***, 216 Wis. 2d at 281-82.

¶24 Our decision in *Turkow* is illustrative. There, the DNR determined that a stream was navigable and therefore advised a property owner that he was required to remove three structures that obstructed the stream's flow. *Id.* at 275-76. The property owner "did not pursue any remedy available under" WIS. STAT. ch. 227. *Turkow*, 216 Wis. 2d at 275. Instead, he filed suit against the DNR "seeking a declaration that the DNR lacked jurisdiction to make orders regarding the stream or, alternatively, was estopped from challenging the navigability status of the stream" based on an earlier finding by the Public Service Commission that the stream was not navigable. *Id.*

¶25 On appeal, we agreed with the DNR that the property owner's suit was barred by sovereign immunity. *Id.* at 281. We explained that "[t]he consent to suit against a state agency is set forth in" WIS. STAT. ch. 227, which "provides for both administrative review of agency action and judicial review of agency decisions and orders." *Turkow*, 216 Wis. 2d at 281-82. Accordingly, "the proper method for challenging the DNR's navigability determination [was] to pursue the relief afforded in ch. 227." *Turkow*, 216 Wis. 2d at 283. Because the property owner did not follow that procedure, we concluded that the circuit court should have granted the DNR's motion to dismiss the property owner's lawsuit on sovereign immunity grounds. *Id.*

¶26 The same reasoning applies here. To the extent Loki wants to challenge an action taken by the DNR, it must follow the judicial review procedure set forth in WIS. STAT. ch. 227. It is undisputed that Loki has not done so. "[S]trict

compliance" is required with the procedural rules set forth in ch. 227.[3]   *Kosmatka v. DNR*, 77 Wis. 2d 558, 568, 253 N.W.2d 887 (1977).

¶27    In arguing that its claims for declaratory judgment and injunctive relief are not barred by sovereign immunity, Loki relies on a "fiction" recognized by Wisconsin courts that allows declaratory judgment actions against state agencies to proceed under certain circumstances.  *See Lister v. Board of Regents of the Univ. Wis. Sys.*, 72 Wis. 2d 282, 303, 240 N.W.2d 610 (1976); *PRN Assocs., LLC v. DOA*, 2009 WI 53, ¶52, 317 Wis. 2d 656, 766 N.W.2d 559.   Specifically, our supreme court has explained that

> the declaratory judgment procedure is particularly well-suited (in cases where such relief is otherwise appropriate) for resolving controversies as to the *constitutionality or proper construction and application of statutory provisions*.  As a result, it has been necessary to engage in a fiction that allows such actions to be brought against the officer or agency charged with administering the statute on the theory that a suit against a state officer or agency is not a suit against the state when it is based on the premise that the officer or agency is *acting outside the bounds of his [or her] or its constitutional or jurisdictional authority*.

---

[3] The DNR notes that it "does not concede" that Loki could obtain review of the DNR's January 25, 2021 letter under WIS. STAT. ch. 227.  *See Container Life Cycle Mgmt., LLC v. DNR*, 2022 WI 45, ¶¶1-2, 50-51, 402 Wis. 2d 337, 975 N.W.2d 621 (concluding that letters issued by the DNR were not subject to judicial review under ch. 227 because they were merely a "step along the way" and did not adversely affect the appellant's substantial interests).  In any event, we agree with the DNR that regardless of whether the letter is reviewable under ch. 227, that chapter remains "Loki's only *potential* avenue if it were to have a cognizable claim about agency action."

In its brief-in-chief, Loki asks rhetorically whether it "[has] to wait for the DNR to take other action" beyond the January 25, 2021 letter before seeking judicial review.  We agree with the DNR that, based on our supreme court's decision in *Container Life Cycle Management*, the answer to that question is "yes."  *See Container Life Cycle Mgmt.*, 402 Wis. 2d 337, ¶¶1-2, 50-51.  Notably, in *Container Life Cycle Management*, the supreme court expressly rejected the appellant's argument that an entity should be permitted to challenge "any decision in the administrative process if [that decision] caused [the entity] to incur costs."  *Id.*, ¶¶46-47.

*Lister*, 72 Wis. 2d at 303 (emphasis added; footnote omitted); *see also City of Kenosha v. State*, 35 Wis. 2d 317, 323, 151 N.W.2d 36 (1967) (stating that "courts may entertain suits to enjoin state officers and state agencies from acting beyond their constitutional or jurisdictional authority").

¶28    After examining the allegations in Loki's complaint, we agree with the DNR that the limited exception to sovereign immunity discussed in *Lister* and *PRN Associates* is inapplicable here. Loki's complaint does not pertain to the constitutionality or proper construction and application of a statute. *See Lister*, 72 Wis. 2d at 303. Nor are there any allegations in the complaint that would support a conclusion that the DNR acted beyond its constitutional or jurisdictional authority.[4] *See id.*

¶29    On appeal, Loki notes that the DNR has authority to promulgate rules relating to landfill operations. *See* WIS. STAT. § 289.05(1). Loki further notes that the DNR granted Loki a license to operate the Landfill pursuant to those rules. *See* WIS. ADMIN. CODE §§ NR 500.06, 500.065 (Jan. 2024). Loki also observes that a landfill must have a "plan of operation" that has been approved by the DNR, *see* WIS. STAT. § 289.30; WIS. ADMIN. CODE § NR 514.04(1) (July 2022), and that a landfill owner is required to comply with that plan of operation, *see* § 289.30(9); WIS. ADMIN. CODE § NR 506.07 (July 2022). Failure to comply with a plan of operation may subject a landfill owner to an enforcement action, which may result in the revocation of the owner's license. *See* § 289.30(9); WIS. ADMIN. CODE § NR

---

[4] The complaint does allege that, during the preceding four decades, the DNR was "responsible for oversight of the Landfill," "had a general duty to enforce the environmental laws and policies of the state," and "failed to adhere to that duty and instead allowed for the use of the Landfill, by others, in a manner that was substantially certain to cause environmental harm." In the circuit court, however, Loki conceded that the DNR's alleged *failure to enforce regulations* in the past did not qualify as an instance of the DNR acting *beyond* its constitutional or jurisdictional authority.

506.18 (July 2022). Loki asserts, however, that there is "no mechanism in the statute nor the regulations that allow[s] the DNR to unilaterally alter the plan of operation." Loki therefore contends that its complaint "called out the DNR for issuing a letter that it had no regulatory authority to take."

¶30 This argument fails because there is no allegation in Loki's complaint that the DNR unilaterally altered the plan of operation for the Landfill. Moreover, the DNR's January 25, 2021 letter—which, again, is attached to the complaint—does not support such an assertion.

¶31 In the letter, the DNR stated that the Landfill must "be operated in accordance with its current plan of operation" and that acting contrary to the plan of operation "would be in violation of [WIS. STAT. § 289.30(9)] unless the plan of operation is modified and approved by the [DNR]." The letter then discussed the Landfill's existing plan of operation, including a 1985 plan modification that was approved by the DNR.[5] The letter also explained what modifications to the existing plan of operation would be needed to accommodate Loki's planned use of the Landfill and informed Loki that any modifications would need to meet the "requirements of [WIS. ADMIN. CODE § NR 500.05]." Finally, the letter reiterated that § 289.30(9) "requires the operator of a licensed landfill to operate in compliance with the approved plan of operation" and that "[f]ailure to comply with plan of operation could result in suspension or revocation of the operating license under" WIS. STAT. § 289.31.

---

[5] Loki's complaint does not contain any allegations disputing the statement in the DNR's letter that the Landfill's plan of operation was modified in 1985. In fact, the complaint acknowledges that the Landfill's prior owner "obtained a separate approval in 1985" to deposit flyash in the Landfill.

13

¶32  We agree with the DNR that rather than "unilaterally alter[ing] the plan of operation," as Loki contends, the DNR's letter "simply inform[ed] Loki of what [was] already required by the license, statutes, and rules: that Loki must comply with its plan of operation unless and until a plan is modified through an application from Loki that would allow for [DNR] approval under the governing regulations and statutes." As such, the letter does not support Loki's assertion that the DNR exceeded its authority.[6]

¶33  Accordingly, we reject Loki's argument that the limited exception to sovereign immunity discussed in *Lister* and *PRN Associates* is applicable here. Instead, for all of the foregoing reasons, we conclude that sovereign immunity bars Loki's claims. We therefore affirm the circuit court's order dismissing Loki's complaint.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Citing *Wisconsin Legislature v. Palm*, 2020 WI 42, ¶52, 391 Wis. 2d 497, 942 N.W.2d 900, and *Clean Wisconsin, Inc. v. DNR*, 2021 WI 71, ¶16, 398 Wis. 2d 386, 961 N.W.2d 346, Loki argues, generally, that agency power "is not unlimited and rather must be within the confines of a statutory grant." We do not dispute this proposition. As discussed above, however, Loki has not explained—and the allegations in Loki's complaint do not show—*how* the DNR exceeded the authority granted to it by the applicable statutes.